# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| DOMINICK RUSSO, et al., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION 24-0186-WS-M |
| | ) |
| GINA RAIMONDO, etc., et al., | ) |
| | ) |
|     Defendants. | ) |

## ORDER

This matter is before the Court on the defendants' motion to dismiss for improper venue or, in the alternative, to transfer to a proper venue. (Doc. 17). The plaintiffs have filed a response and the defendants a reply, (Docs. 21, 22), and the motion is ripe for resolution. After careful consideration, the Court concludes that the motion is due to be denied.

## BACKGROUND

According to the complaint, (Doc. 1), the plaintiffs are two commercial fishermen and the commercial fishing business they jointly own. The defendants are the Secretary of Commerce in her official capacity ("the Secretary"), the Assistant Administrator for Fisheries in her official capacity ("the Administrator"), and the National Marine Fisheries Service ("NMFS"), an agency within the Department of Commerce. (*Id*. at 3-4). NMFS has promulgated a final rule ("the Final Rule") reducing by over 80% the commercial catch limit for gag grouper. (*Id*. at 7). The plaintiffs' business includes gag grouper, and they would, but for the Final Rule, fish for more gag grouper than the Final Rule allows. (*Id*. at 3).

Federal fisheries are regulated principally through the Magnuson-Stevens Fishery Conservation and Management Act ("the Act"). (Doc. 1 at 7). The Act provides for the

development of Fishery Management Plans ("FMP"), with the FMP at issue addressing "Reef Fish Resources of the Gulf of Mexico" ("the Reef FMP"). The Reef FMP regulates and manages gag grouper, including by imposing annual catch limits, divided between recreational and commercial fishermen. (*Id*. at 5).

FMP's, including amendments to FMP's, are developed by eight regional Fishery Management Councils ("FMC") established by the Act, with the FMC at issue being the Gulf of Mexico FMC ("the Council"). (Doc. 1 at 7, 9). FMP's and amendments are submitted to the Secretary or her delegate for approval, which approval may not be withheld on policy grounds but only for violation of applicable law. (*Id*. at 7-8, 15-16). Approved FMP's and amendments are implemented by regulations, which are proposed by the FMC's and promulgated by the Secretary or her delegate. (*Id*. at 8). As with FMP's, the Secretary cannot reject a proposed implementing regulation on policy grounds but only for violation of law. (*Id*.). The Secretary may alter a proposed regulation only after consultation with the FMC, and she cannot compel the FMC to consult. (*Id*.).

The Act created the Council to be an independent policymaking body. It is an independent entity within the Executive Branch and not contained within any other agency or executive department. (Doc. 1 at 9). Its seventeen members consist of the regional director of NMFS, the principal state official with marine fishery management responsibility and expertise in each of the five constituent states, and members selected by the Secretary from nominations submitted by the governors of the constituent states. (*Id*. at 10).

In June 2023, the Council met in Mobile, Alabama and there voted in favor of amending the Reef FMP to reflect the lower gag grouper limits discussed above ("Amendment 56"). (Doc. 1 at 5). The Council also approved a proposed regulation implementing Amendment 56. (*Id*.).[1] In October 2023, NMFS announced the

---

[1] Although the complaint does not explicitly state that this approval occurred in Mobile, the plaintiffs' brief repeatedly says that it did, (Doc. 21 at 2, 3-4, 5, 6, 7), and the defendants in their reply do not challenge this assertion.

availability of Amendment 56 and requested public comment. (*Id*. at 6). In November 2023, NMFS determined the proposed rule was lawful and published it for public comment. (*Id*. at 6-7). In January 2024, NMFS determined that Amendment 56 was lawful. (*Id*.). The Final Rule became effective on June 1, 2024. (*Id*.). The Final Rule was issued under provisions of the Act that require the Council to validly adopt an amendment and implementing regulation before the Secretary may promulgate a final rule. (*Id*. at 1-2, 18, 21).

The relief sought in this lawsuit is a declaration that the Final Rule is void. (Doc. 1 at 22). The complaint alleges that the Council members were not appointed in compliance with the Appointments Clause and that their tenure protections violate the Executive Vesting Clause and the Take Care Clause, rendering void the Council's adoption of Amendment 56 and its implementing regulation. The complaint alleges further that the Act precludes promulgation of the Final Rule absent a validly adopted Council measure, such that the Final Rule violates the Administrative Procedure Act as not in accordance with law, in excess of statutory authority, without observance of procedure required by law, and/or contrary to constitutional right and power. (*Id*. at 18, 21-22).

The defendants move to dismiss under Rule 12(b)(3) for improper venue. In the alternative, they move for transfer to a proper venue pursuant to 28 U.S.C. § 1406(a).

## DISCUSSION

The defendants have submitted a declaration in support of their motion. (Doc. 17-1). The plaintiffs have submitted no evidentiary materials. However, "the facts as alleged in the complaint are taken as true to the extent they are uncontroverted by defendants' affidavits." *Home Insurance Co. v. Thomas Industries, Inc*., 896 F.3d 1352, 1355 (11th Cir. 1990). Happily, the defendants' declaration does not conflict with the allegations of the complaint, so the Court may consider them in tandem.

The Secretary and the Administrator are sued in their official capacities only. The parties agree that venue is thus to be gauged under 28 U.S.C. § 1391(e). (Doc. 1 at 3;

Doc. 17 at 12; Doc. 22 at 5).[2] Section 1391(e) provides three separate measures of venue, but only the second is in play.[3]

Venue is proper under Section 1391(e)(1)(B) "in any judicial district in which … a substantial part of the events or omissions giving rise to the claim occurred." This language parallels that of Section 1391(b)(2), the general venue provision, and the parties agree that *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366 (11th Cir. 2003), which construed the identical language under a previous iteration of that provision,[4] governs the construction of Section 1391(e)(1)(B). (Doc. 17 at 14-15; Doc. 21 at 4, 5-6; Doc. 22 at 1-3, 6 n.1).

"Only the events that directly give rise to a claim are relevant. And of the places where the events have taken place, only those locations hosting a 'substantial part' of the events are to be considered." *Jenkins Brick*, 321 F.3d at 1371. "The new language thus contemplates some cases in which venue will be proper in two or more districts." *Id*.[5] The parties accept all these points,[6] but they dispute their application to this case.

The first *Jenkins Brick* step requires the Court to identify the relevant events, which are confined to those "that directly give rise to a claim." The defendants argue that, while it "is relevant to the development of Amendment 56," the Council's vote in

---

[2] Neither side suggests that the presence of NMFS as a defendant alters the venue analysis.

[3] The defendants devote much attention to the parties' residence, (Doc. 17 at 6-8, 9-10), but the complaint does not rest venue on such grounds. (Doc. 1 at 3).

[4] The *Jenkins Brick* Court construed what was then the venue statute governing diversity cases, then codified as 28 U.S.C. § 1391(a)(2). 321 F.3d at 1370 & n.6.

[5] Prior to 1990, Section 1391(a)(2) "provided for venue only in the single district 'in which the claim arose.'" *Jenkins Brick*, 321 F.3d at 1371. A 1990 amendment created the statutory language at issue here.

[6] In their principal brief, the defendants asserted that "[v]enue is improper … because a substantial portion of the events giving rise to the claims occurred outside of Alabama." (Doc. 17 at 14). After the plaintiffs pointed out *Jenkins Brick*'s express recognition that more than one district may host a substantial portion of the events giving rise to a claim and thus be a proper venue, (Doc. 21 at 8), the defendants in their reply conceded the point. (Doc. 22 at 9).

Mobile does not directly give rise to the plaintiffs' claims. (Doc. 17 at 14). Because only the Final Rule represents enforceable law, because the Act provides for judicial review only with respect to final rules, and because the complaint seeks a declaration that the Final Rule is void, the defendants conclude that the Final Rule "was the [only] event that directly gave rise to the [plaintiffs'] claims." (Doc. 22 at 6-7).

The defendants misapprehend *Jenkins Brick*. Just as there can be more than one proper venue, there can be more than one event giving rise to a claim. The very language of the opinion makes this clear, since it requires a court to identify the "events" (not the "event") giving rise to the claim, 321 F.3d at 1371, and since the panel identified in the case before it not one, but three, "events that give rise to [the plaintiff's] claim." *Id*. at 1372.[7]

The defendants appear to believe that only the final event giving rise to a cause of action can be considered for venue purposes: "The Gulf Council's vote in Mobile, Alabama did not and could not *directly* give rise to their claims, because only NMFS can promulgate a final rule that gives effect to a fishery regulation that has the force of law." (Doc. 22 at 6 (emphasis in original)). Again, no. The *Jenkins Brick* panel identified three events "g[i]v[ing] rise" to the plaintiff's claim for breach of contract: (1) execution of the contract; (2) intended performance of the contract; and (3) breach of the contract. 321 F.3d at 1372. Even though it is the final event supporting a cause of action for breach of contract, the Eleventh Circuit did not confine the universe of relevant events to the act of breach but included other items necessary to support such a claim: the existence of a contract and the terms of the contract.

The defendants ignore this portion of *Jenkins Brick*, instead emphasizing its discussion of *Woodke v. Dahm*, 70 F.3d 983 (8th Cir. 1995). The defendants tease out of this discussion the proposition that even "'necessary' events" may not be relevant to the venue analysis. (Doc. 22 at 7). The defendants, however, confuse factual necessity with legal necessity.

---

[7] The Court could scarcely have ruled otherwise, since the statute employs the plural, "events or omissions."

In *Woodke*, the defendant manufactured in State A certain trailers that it later passed off in State B under a trademark identical to the plaintiff's trademark. Even though the trailers could not have been wrongfully passed off in State B had they not first been created in State A, such that manufacturing was a "'necessary event, in a causal sense, to an attempt to pass them off,'" the Eighth Circuit held that the manufacturing "'is [not] an event giving rise to [the] claim because it was not itself wrongful.'" *Jenkins Brick*, 321 F.3d at 1372 (quoting *Woodke*, 70 F.3d at 985-86). The Eleventh Circuit called this "a good interpretation of" the statutory language. *Id*.

In *Woodke*, manufacturing trailers was a *factual* predicate to passing off the trailers under another's trademark, but it was not a *legal* predicate; the defendant would have been equally liable had it acquired the trailers from a third party. Here, in contrast, the Council's approval of Amendment 56 and the proposed implementing regulation is the precise reason the Final Rule is (allegedly) unlawful; had NMFS promulgated the Final Rule on its own rather than in response to the Council's action,[8] the plaintiffs' claim could not have arisen.

An event "directly give[s] rise to a claim" if it "ha[s] a close nexus to the wrong." *Jenkins Brick*, 321 F.3d at 1371-72. The Council's approval of Amendment 56 and the proposed implementing regulation patently has a close nexus to the allegedly wrongful promulgation of the Final Rule, because the complaint identifies these actions of the Council – which prompted and largely controlled NMFS's action – as the very reason the Final Rule is unlawful. The nexus is even closer, because the Council is alleged to be an unconstitutionally structured body, thus making its vote wrongful (if not actionable) in itself.[9]

---

[8] The defendants say such a course is permitted by statute. (Doc. 22 at 7 n.2).

[9] The defendants' position may be illustrated by the following analogy: Car A (representing the Council), driven by an unlicensed individual (representing the Council's unconstitutional structure), rear-ends stationary Car B (representing NMFS), compelling Car B to rear-end Car C (representing the plaintiffs). Applying the defendants' reasoning would lead to the bizarre conclusion that the improper operation of Car A has no close nexus with, and thus is not a direct cause of, the injury to Car C.

The defendants place great weight on a sister court's ruling in *Rogers v. Civil Air Patrol*, 129 F. Supp. 2d 1334 (M.D. Ala. 2001). The plaintiff in *Rogers* sued the Secretary of the Air Force and a volunteer civilian auxiliary ("CAP"), alleging that a federal statute was unconstitutional because the Board of Governors that it created for CAP was structured in violation of the Appointments Clause and the Separation of Powers Doctrine. *Id*. at 1335-36. The *Rogers* Court held that venue under Section 1391(e)(1)(B)[10] was proper in the District of Columbia (where the statute was passed) but not in the Middle District of Alabama, where CAP was headquartered and where its national executive committee selected members of the Board of Governors – conduct the *Rogers* Court deemed only "tangentially related" to the plaintiff's claim. *Id*. at 1339-40.

It may be, as the defendants argue, (Doc. 22 at 8), that the District of Columbia is likewise a proper venue in this case, but that would not make the Southern District of Alabama an improper venue. To the extent the defendants encourage the Court to conclude that the Council's vote in Mobile is as "tangentially related" to the plaintiff's claim as the *Rogers* Court found CAP's vote in Montgomery to be to that plaintiff's claim, (*id*. at 7), the Court declines the invitation. For reasons identified above, the Council's vote to approve Amendment 56 and the proposed implementing regulation cannot tenably be dismissed as merely "tangentially related" to the plaintiffs' claim that the Final Rule is void.

The *Rogers* Court's reasoning is tricky to dissect. At one point, the Court stated that "it is not plausible to argue that Plaintiff's *claims arose* in the Middle District of Alabama," 129 F. Supp. 2d at 1339 (emphasis added), suggesting it employed the restrictive venue standard that, as *Jenkins Brick* noted, was retired in the 1990's (well before *Rogers* was decided). *See* note 5, *supra*. At another point, *Rogers* dismissed the Montgomery vote on other grounds: that it was irrelevant to venue because it occurred *after* suit was filed and so "could not logically have given rise to Plaintiff's claims" asserted in the complaint. 129 F. Supp. 2d at 1339.

---

[10] At the time, this provision was codified as 28 U.S.C. § 1391(e)(2).

7

In support of its alternative statement (or dicta) that events occurring in Montgomery were "only tangentially related to the dispute at the heart of this case," the *Rogers* Court relied exclusively on the fact that the lawsuit was "a challenge to federal legislation," with the "gravamen of the complaint" being that the federal statute introducing a Board of Governors was unconstitutional. 129 F. Supp. 2d at 1339. The mere existence on the books of an unconstitutional statute, however, could not alone "giv[e] rise to [a] claim" because, without an injury visited on the plaintiff, he would lack standing to pursue a claim.[11]  That is, the single fact that a statute is challenged as unconstitutional does not mean, as the defendants suggest, (Doc. 22 at 8-9), that another occurrence (such as its application in a manner that injures the plaintiff) cannot be an event that gives rise to the claim.[12]

The Council's vote in Mobile, in short, qualifies as an event that directly gives rise to the plaintiff's claims. The Court therefore proceeds to consider the second *Jenkins Brick* step: whether this event constitutes "a 'substantial part' of the events" directly giving rise to those claims. *Jenkins Brick*, 321 F.3d at 1371.

For purposes of this second step, the defendants abruptly reverse course, identifying a wealth of relevant events and arguing that "the vast majority of the operative facts giving rise to Plaintiff's claims occurred outside this District." (Doc. 17 at 14-15). These include the following: (1) passage of the Act (in the District of Columbia); (2) Council meetings at which Amendment 56 was discussed (in Alabama,

---

[11] Indeed, the transferee Court dismissed the action precisely because the plaintiff showed no threatened or actual injury and thus lacked standing. *Rogers v. Civil Air Patrol*, Civ. No. 01-0418 (Doc. 14) (D.D.C. 2002).

[12] This is not to say that *Rogers* was wrongly decided on its facts. The only event the *Rogers* plaintiff could point to beyond enactment of the statute was the creation of the Board of Governors envisioned by the statute, an event which (given the transferee court's ruling) presumably did not of itself injure the plaintiff. In this case, however, the plaintiffs rely, not on the mere creation of the Council, but on specific actions taken by the Council that, promulgated as the Final Rule, directly and negatively impact the plaintiffs' financial interests.

8

Louisiana, Mississippi, Texas, and Florida);[13] (3) meetings of Council committees and panels at which Amendment 56 or the gag grouper issue was discussed (in Florida);[14] (4) hearings at which the Council received public comment regarding the issue (in Florida);[15] (5) the Council vote to adopt Amendment 56 and the proposed implementing regulation (in Alabama); (6) the work of NMFS staff in reviewing the Council's action (in Florida);[16] and (7) the Administrator's approval of Amendment 56, its proposed implementing regulation, and the Final Rule (in Maryland).  (Doc. 17 at 10-11, 14-15; Doc. 17-1).[17]  For purposes of this discussion, the Court assumes without deciding that all of the matters listed by the defendants are relevant events within the contemplation of the first *Jenkins Brick* step.

By emphasizing that "nearly all the events that give rise to the claims in this case occurred *outside* of Alabama," (Doc. 17 at 15 (emphasis in original)), the defendants characterize the second *Jenkins Brick* step as a simple matter of counting up events in each jurisdiction.  It is not.  "'Substantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's

---

[13] The Council discussed Amendment 56 at nine meetings in five Districts:  (a) the Southern District of Alabama (three); (b) the Middle District of Louisiana (two); (c) the Southern District of Mississippi (two); (d) the Southern District of Texas (one); and (e) the Middle District of Florida (one).  (Doc. 17 at 10; Doc. 17-1 at 1-2).

[14] Council committees and panels discussed gag grouper six times and Amendment 56 once, all at the Council's office in the Middle District of Florida.  (Doc. 17 at 10-11; Doc. 17-1 at 2).

[15] The Council held four public hearings on Amendment 56, two in the Northern District of Florida and two in the Middle District of Florida.  (Doc. 17 at 11; Doc. 17-1 at 2).

[16] NMFS's southeast regional office is in the Middle District of Florida.  Technically, the defendants offer no evidence that agency staff performed any activity relative to Amendment 56, the proposed regulation, or the Final Rule in that District or elsewhere; instead, they say only that this is where staff responsible for such matters are located.  (Doc. 17 at 9; Doc. 17-1 at 2).

[17] The defendants also rely on the location of documents supporting the Administrator's decision as being in the Middle District of Florida.  (Doc. 17 at 15; Doc. 17-1 at 2).  The location of documents is irrelevant to the *Jenkins Brick* analysis, because it is not an "event."  *See also Jenkins Brick*, 321 F.3d at 1372 (venue is not determined by personal jurisdiction measurements).

9

claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Daniel v. American Board of Emergency Medicine*, 428 F.3d 408, 432-33 (2nd Cir. 2005). Sister courts have repeatedly confirmed this principle. *TrakSouth Civil Contractors, LLC v. Branch Banking & Trust Co.*, 2014 WL 12936989 at *2 (S.D. Ga. 2014); *Infinite Growth Group v. Infinite Growth Associates*, 2010 WL 3190613 at *1 (M.D. Fla. 2010); *AutomationDirect.com, Inc. v. Autotech Technologies, L.P.*, 2006 WL 8432135 at *4 (N.D. Ga. 2006).

      In their reply brief, the defendants belatedly attempt to address these events from a qualitative rather than merely quantitative perspective. (Doc. 22 at 9-10). The defendants offer no explanation for their failure to present this argument in their principal brief. The argument therefore comes too late to be considered. *E.g., Parker v. Exterior Restorations, Inc*., 653 F. Supp. 3d 1105, 1108 (S.D. Ala. 2023).

      Even had the defendants' tardy argument been timely raised, it would fail. They merely posit without elaboration that the Council's pre-vote discussions, hearings, and staff work were more closely connected to the plaintiffs' claims than was the Council's vote, (Doc. 22 at 9), as if considering how to act were more substantial an event than acting. They say that NMFS's (assumed) post-vote review of the Council's adoption of Amendment 56 and the proposed regulation is more closely connected to the plaintiffs' claims because it was a necessary predicate to the agency's promulgation of the Final Rule, (*id*. at 9-10), an argument that simply confirms the centrality of the Council's vote – itself a necessary predicate to the Final Rule.

      The defendants believe they have demonstrated that venue is proper in the District of Columbia, the District of Maryland, and the Middle District of Florida. (Doc. 17 at 17; Doc. 22 at 10). The Court need not resolve whether each, or any, of these venues would be proper, because venue plainly is proper in this District. The Council's vote in Mobile was an event that directly gave rise to the plaintiff's claims, and that vote constitutes a

qualitatively substantial part of the events directly giving rise to those claims.[18]  Venue is thus proper in the Southern District of Alabama under Section 1391(e)(1)(B).

## CONCLUSION

For the reasons set forth above, the defendants' motion to dismiss or, in the alternative, to transfer, is **denied**.

DONE and ORDERED this 24th day of October, 2024.

s/ WILLIAM H. STEELE  
UNITED STATES DISTRICT JUDGE

---

[18] Although unnecessary to the Court's decision, three of the nine Council meetings on which the defendants rely also occurred in the Southern District of Alabama – more than in any other District.