**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| DOMINICK RUSSO; JAMES RUSSO; and FFC SEAFOOD, INC., | ) ) ) | Case No. 1:24-cv-00186-WS-M |
| Plaintiffs, | ) ) | **DEFENDANTS' CROSS-MOTION** |
| v. | ) ) | **FOR SUMMARY JUDGMENT** |
| GINA RAIMONDO, in her official capacity as Secretary of Commerce; JANET COIT, in her official capacity as Assistant Administrator for Fisheries; and NATIONAL MARINE FISHERIES SERVICE, | ) ) ) ) ) ) | |
| Defendants. | ) ) ) ) ) | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

TABLE OF ACRONYMS .................................................................................................... x

INTRODUCTION ................................................................................................................ 1

STATUTORY BACKGROUND ......................................................................................... 3

FACTUAL BACKGROUND .............................................................................................. 7

    I.    Gag Grouper ........................................................................................................... 7

    II.    Management of Gag Grouper in the Gulf ............................................................. 8

    III.    Amendment 56 ...................................................................................................... 9

STANDARD OF REVIEW ............................................................................................... 11

ARGUMENT ..................................................................................................................... 12

    I.    Congress Gave the Secretary the Final Word on FMPs and the Exclusive
        Authority to Promulgate Regulations. ............................................................... 12

        A.    The Statute's Terms Do Not Limit the Secretary's Review. .................... 13

        B.    The Statute Assigns Fishery Management Councils Only an Advisory Role. ......... 14

        C.    Council Members Are Not Officers of the United States. ........................ 16

        D.    Plaintiffs Misconstrue the Role of Councils in the Process for Approving
            FMPs and Promulgating Regulations. ...................................................... 18

        E.    Plaintiffs Cannot Salvage Their Argument with a Hodgepodge of Provisions. ....... 26

        F.    The Court Must Construe Any Ambiguity to Avoid Constitutional Doubt. ............ 30

    II.    Plaintiffs Are Not Entitled to Relief Against the Final Rule. ......................... 31

        A.    If the Court Identifies a Constitutional Flaw with Any Provisions, the Proper
            Remedy Is Severance. ............................................................................... 31

        B.    Plaintiffs Have Not Shown Any Injury Resulting from Any Infirmity
            in the Council. ........................................................................................... 33

CONCLUSION.................................................................................................................... 35

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Alaska Factory Trawler Ass'n v. Baldridge*,
    831 F.2d 1456 (9th Cir. 1987) ........................................................................... 24

*All. Against IFQs v. Brown*,
    84 F.3d 343 (9th Cir. 1996) ............................................................................... 20

*Arnesen v. Raimondo*,
    No. 1:23-CV-145-TBM-RPM, 2024 WL 377820 (S.D. Miss. Jan. 31, 2024) ................ 34

*Ayotte v. Planned Parenthood of N. New Eng.*,
    546 U.S. 320 (2006)........................................................................................... 33

*Barr v. Am. Assoc. of Pol. Consultants*,
    590 U.S. 610 (2020)........................................................................................... 33

*Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*,
    354 F. Supp. 3d 1253 (N.D. Ala. 2018)............................................................... 12

*Buckley v. Valeo*,
    424 U.S. 1 (1976)......................................................................................... 22, 35

*Burke v. Coggins*,
    521 F. Supp. 3d 31 (D.D.C. 2021) ..................................................................... 25

*California v. Texas*,
    593 U.S. 659 (2021)........................................................................................... 27

*Clark v. Rameker*,
    573 U.S. 122 (2014)........................................................................................... 15

*Collins v. Yellen*,
    141 S. Ct. 1761 (2021)....................................................................................... 31

*Confederated Tribes of Siletz Indians of Or. v. United States*,
    110 F.3d 688 (9th Cir. 1997) ............................................................................. 29

*Conservation L. Found. v. Ross*,
    374 F. Supp. 3d 77 (D.D.C. 2019)...................................................................... 20

*Currin v. Wallace*,
    306 U.S. 1 (1939)............................................................................................... 29

*Delta Com. Fisheries Ass'n v. Gulf of Mex. Fishery Mgmt. Council,*
    364 F.3d 269 (5th Cir. 2004) ........................................................... 35

*Edmond v. United States,*
    520 U.S. 651 (1997).......................................................................... 30

*FEC v. NRA Pol. Victory Fund,*
    6 F.3d 821 (D.C. Cir. 1993)............................................................ 35

*Fishing Co. of Alaska v. Gutierrez,*
    510 F.3d 328 (D.C. Cir. 2007)........................................................ 24

*Flaherty v. Ross,*
    373 F. Supp. 3d 97 (D.D.C. 2019)................................................. 18

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
    561 U.S. 477 (2010)............................................................ 15, 28, 34

*Freytag v. Comm'r of Internal Revenue,*
    501 U.S. 868 (1991).......................................................... 12, 21, 26, 27

*Gen. Category Scallop Fishermen v. U.S. Dep't of Com.,*
    635 F.3d 106 (3d Cir. 2011)............................................................. 6

*Goethel v. Pritzker,*
    No. 15-CV-497-JL, 2016 WL 4076831 (D.N.H. July 29, 2016)..................... 17

*Gulf Restoration Network v. NMFS,*
    730 F. Supp. 2d 157 (D.D.C. 2010) ............................................... 5

*J.H. Miles & Co. v. Brown,*
    910 F. Supp. 1138 (E.D. Va. 1995) ............................................ 6, 17

*Jennings v. Rodriguez,*
    583 U.S. 281 (2018).......................................................................... 31

*Kramer v. Mosbacher,*
    878 F.2d 134 (4th Cir. 1989) ......................................................... 12

*Lac Courte Orielles Band of Lake Superior Chippewa Indians of Wis. v. United States,*
    367 F.3d 650 (6th Cir. 2004) ......................................................... 29

*Lofstad v. Raimondo,*
    117 F.4th 493 (3d Cir. 2024) ................................................. *passim*

*Lovgren v. Locke*,
    701 F.3d 5 (1st Cir. 2012) ..................................................... 20, 21

*Lucia v. Sec. & Exch. Comm'n*,
    585 U.S. 237 (2018) .................................................... *passim*

*Massachusetts v. Pritzker*,
    10 F. Supp. 3d 208 (D. Mass. 2014) .................................. 7

*McIntosh v. United States*,
    601 US. 330 (2024) ....................................................... 19, 25

*N.C. Fisheries Ass'n v. Gutierrez*,
    550 F.3d 16 (D.C. Cir. 2008) ........................................ 5, 24

*New Eng. Fishermen's Stewardship Ass'n v. Raimondo*,
    No. 2:23-CV-00339, 2024 WL 5247893 (D. Me. Dec. 30, 2024) ......... 2, 21, 32

*North Dakota v. United States*,
    460 U.S. 300 (1983) ....................................................... 29

*Pres. the Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*,
    87 F.3d 1242 (11th Cir. 1996) ........................................ 22

*Seila L. LLC v. CFPB*,
    591 U.S. 197 ................................................................. 31

*State of New York v. Raimondo*,
    84 F.4th 102 (2d Cir. 2023) ........................................... 20

*United Cook Inlet Drift Ass'n v. NMFS*,
    No. 3:21-cv-00247-JMK, 2022 WL 2222879 (D. Alaska June 21, 2022) ...... 17

*United States v. Arthrex, Inc.*,
    594 U.S. 1 (2021) .................................................. 16, 17, 30, 32

*United States v. Hansen*,
    599 U.S. 762 (2023) ....................................................... 31

## Statutes

5 U.S.C. § 706(2)(A)-(D) ....................................................... 12

5 U.S.C. § 7513 ................................................................. 32

16 U.S.C. § 773c(c) ............................................................ 30

16 U.S.C. § 1801 ................................................................................................ 3

16 U.S.C. § 1801(a)(1)-(3) ................................................................................ 3

16 U.S.C. § 1801(b)(1) ...................................................................................... 3

16 U.S.C. § 1801(b)(3) ...................................................................................... 3

16 U.S.C. § 1801(b)(4) ...................................................................................... 3

16 U.S.C. § 1801(b)(5) ................................................................................ 4, 15

16 U.S.C. § 1802(4) ........................................................................................... 8

16 U.S.C. § 1802(9) ......................................................................................... 11

16 U.S.C. § 1802(11) ....................................................................................... 13

16 U.S.C. § 1802(23) ......................................................................................... 9

16 U.S.C. § 1802(27) ......................................................................................... 8

16 U.S.C. § 1802(34) ......................................................................................... 9

16 U.S.C. § 1802(37) ......................................................................................... 8

16 U.S.C. § 1802(38) ....................................................................................... 11

16 U.S.C. § 1851-1856 ...................................................................................... 3

16 U.S.C. § 1851(a) ........................................................................................... 4

16 U.S.C. § 1851(a)(1) ..................................................................................... 19

16 U.S.C. § 1851(b) ..................................................................................... 4, 19

16 U.S.C. § 1852 ............................................................................................... 6

16 U.S.C. § 1852(a) ........................................................................................... 3

16 U.S.C. § 1852(a)(1) ....................................................................................... 3

16 U.S.C. § 1852(a)(1)(E) ............................................................................... 34

16 U.S.C. § 1852(b) ........................................................................................... 3

16 U.S.C. § 1852(b)(2)(C) ............................................................................................... 35

16 U.S.C. § 1852(e)(1) ..................................................................................................... 34

16 U.S.C. § 1852(f)(1)-(3) ................................................................................................ 25

16 U.S.C. § 1852(h)(1) ........................................................................................ 4, 14, 15, 21

16 U.S.C. § 1852(i)(1) ...................................................................................................... 15

16 U.S.C. § 1853 ............................................................................................................... 4

16 U.S.C. § 1853(a)(1)-(15) .............................................................................................. 4

16 U.S.C. § 1853(a)(1)(A) ................................................................................................. 4

16 U.S.C. § 1853(a)(1)(C) ................................................................................................. 4

16 U.S.C. § 1853(a)(15) .................................................................................................... 4

16 U.S.C. § 1853(b)(1)-(4) ................................................................................................ 4

16 U.S.C. § 1853(c) ........................................................................................................... 5

16 U.S.C. § 1854 ............................................................................................................... 6

16 U.S.C. § 1854(a)-(b) ..................................................................................................... 4

16 U.S.C. § 1854(a)(1) ................................................................................................ 14, 19

16 U.S.C. § 1854(a)(1)(A) ................................................................................................. 5

16 U.S.C. § 1854(a)(1)(B) ............................................................................................ 5, 15

16 U.S.C. § 1854(a)(2)(A) ............................................................................................ 5, 15

16 U.S.C. § 1854(a)(3) .............................................................................................. *passim*

16 U.S.C. § 1854(a)(4) ................................................................................................. 5, 13

16 U.S.C. § 1854(b) ..................................................................................................... 6, 14

16 U.S.C. § 1854(b)(1)(A) ................................................................................................ 15

16 U.S.C. § 1854(b)(1)(B) ................................................................................................. 6

16 U.S.C. § 1854(b)(3) .................................................................................. 6, 18, 24, 25

16 U.S.C. § 1854(c) .......................................................................................... 13, 23, 28

16 U.S.C. § 1854(c)(1) ................................................................................................... 6

16 U.S.C. § 1854(c)(1)(A) ........................................................................................ 5, 34

16 U.S.C. § 1854(c)(2)(A) ............................................................................................ 5

16 U.S.C. § 1854(c)(3) ................................................................................................ 27

16 U.S.C. § 1854(c)(4) .................................................................................................. 5

16 U.S.C. § 1854(c)(5) .................................................................................................. 5

16 U.S.C. § 1854(c)(6) ............................................................................................ 6, 34

16 U.S.C. § 1854(c)(7) .................................................................................................. 6

16 U.S.C. § 1854(g) .................................................................................................. 5, 23

16 U.S.C. § 1854(h) ..................................................................................................... 28

16 U.S.C. § 1855 ............................................................................................................ 6

16 U.S.C. § 1855(c)(2) ................................................................................................. 29

16 U.S.C. § 1855(d) ............................................................................................. 3, 6, 13

16 U.S.C. § 1855(f)(1) ................................................................................................. 11

16 U.S.C. § 1855(f)(1)-(2) ........................................................................................... 15

16 U.S.C. § 1856(a)(3)(A) ........................................................................................... 28

35 U.S.C. § 6(c) ........................................................................................................... 32

43 U.S.C. § 1301 .......................................................................................................... 13

43 U.S.C. § 1312 .......................................................................................................... 13

**Regulations**

50 C.F.R. § 600.305-600.355 ....................................................................................... 19

50 C.F.R. § 600.310(b)(2)(ii) ................................................................. 20

50 C.F.R. § 600.310(e)(3)(i) ................................................................. 20

**Federal Register**

70 Fed. Reg. 41161 (July 18, 2005) ....................................................... 8

85 Fed. Reg. 7246 (Feb. 7, 2020) ........................................................ 25

88 Fed. Reg. 27701 (May 3, 2023) ...................................................... 10

88 Fed. Reg. 71812 (Oct. 18, 2023) ..................................................... 10

88 Fed. Reg. 77246 (Nov. 9, 2023) ...................................................... 10

89 Fed. Reg. 40419 (May 10, 2024) ...................................................... 7

**Constitutional Provisions**

U.S. Const. art. 2, § 2. cl. 2 ................................................................. 16

**Other Authorities**

Memorandum Opinion for General Counsels of the Executive Branch
    from Steven G. Bradbury, *Officers of the United States Within the
    Meaning of the Appointments Clause,* 31 Op. O.L.C. 73 (2007) .............................. 16, 22

President Bush Signing Statement on the 2006 Magnuson-Stevens
    Reauthorization Act, 2007 U.S.C.C.A.N. S83, 2007 WL 892712 (Jan. 12, 2007) .......... 23

President Clinton Signing Statement on the 1996 Sustainable Fisheries
    Act, 1996 U.S.C.C.A.N. 4120, 1996 WL 787969 (Oct. 11, 1996) .................................. 23

President Trump Signing Statement on 2018 Amendments to
    Magnuson-Stevens Act, 2018 WL 6839393 (Dec. 31, 2018) ............................................ 23

## TABLE OF ACRONYMS

| | |
|---|---|
| ACL | Annual Catch Limit |
| ACT | Annual Catch Target |
| AM | Accountability Measure |
| APA | Administrative Procedure Act |
| EEZ | Exclusive Economic Zone |
| FMP | Fishery Management Plan |
| IFQ | Individual Fishing Quota |
| NMFS | National Marine Fisheries Service |
| NOAA | National Oceanic and Atmospheric Administration |

## INTRODUCTION

Congress enacted the Magnuson-Stevens Fishery Conservation and Management Act (Magnuson-Stevens Act), originally as the 1976 Fishery Conservation and Management Act, to establish a national program to conserve and manage fishery resources within the United States' Exclusive Economic Zone (EEZ or federal waters). Congress recognized the contribution of fisheries to state and local economies as well as the need for national policy to account for differences among regional fisheries. Congress also recognized the coordination required because the resources being managed—fish and other aquatic species—move between federal and state waters. Accordingly, Congress established a structured process by which the Secretary of Commerce ordinarily receives and considers recommendations from regional advisory bodies representing state and regional stakeholders—the Regional Fishery Management Councils— before she establishes or amends fishery management plans (FMPs) or promulgates implementing regulations.

Defendants followed this process for the challenged revision to management measures related to Gulf of Mexico gag grouper. The Gulf of Mexico Regional Fishery Management Council (Gulf Council) prepared a proposal to revise the measures, including the allocations between recreational and commercial fishermen, and submitted it to the National Oceanic and Atmospheric Administration's (NOAA) Assistant Administrator for Fisheries, who oversees the National Marine Fisheries Service (NMFS). Following review, and exercising the Secretary's delegated authority, the Assistant Administrator proposed and published for public comment the Gulf Council's recommended revised allocations and regulations. After considering public comments, the Assistant Administrator approved the FMP amendment revising the sector allocations and promulgated a regulation to implement the amendment.

1

Plaintiffs are commercial fishermen who object to the regulation. They have no substantive objection to the measures that were adopted but instead contend that the Gulf Council members who recommended the revision were not appointed in accordance with the Appointments Clause and were insulated from removal in violation of the Executive Vesting and Take Care Clauses. This challenge fails because the Gulf Council's role is purely advisory. The Magnuson-Stevens Act's procedural requirement that the Secretary obtain input from regional stakeholders on FMPs and proposed regulations does not constrain the Secretary's substantive policy judgment and discretion to faithfully execute the Act's mandate. FMPs are not enforceable without implementing regulations: only promulgated regulations legally bind fishery participants, and only the Secretary can promulgate proposed and final regulations. Accordingly, Council members lack the sort of authority necessary to qualify as officers of the United States. For these reasons, the Court should deny Plaintiffs' motion for summary judgment and grant Defendants' cross-motion for summary judgment.

In the last year, multiple courts have agreed with the government that the primary functions of the Councils under the Magnuson-Stevens Act do not confer significant authority on their members. *See Lofstad v. Raimondo*, 117 F.4th 493 (3d Cir. 2024); *New Eng. Fishermen's Stewardship Ass'n v. Raimondo*, No. 2:23-CV-00339, 2024 WL 5247893 (D. Me. Dec. 30, 2024). In those cases, the courts also found that certain ancillary provisions of the Act—provisions not implicated in the rulemaking at issue here—confer significant authority on the Councils, and therefore severed those ancillary provisions; although the government disagrees that those ancillary provisions raise constitutional concerns and questions the standing of Plaintiffs to challenge provisions not involved in the challenged rulemaking, the government requests that if this Court finds any such provisions to be problematic, the remedy be severance.

**STATUTORY BACKGROUND**

Congress enacted the Magnuson-Stevens Act to create a comprehensive, national approach to managing fisheries within federal waters. 16 U.S.C. § 1801. The Act establishes federal jurisdiction over fishery resources within the United States' EEZ and provides for their conservation and management. Congress recognized that fisheries are "valuable and renewable natural resources," the dangers of overfishing, and the economic significance of fisheries to the United States. *Id.* § 1801(a)(1)-(3). Congress therefore sought "to take immediate action to conserve and manage the fishery resources found off the coasts of the United States," *id.* § 1801(b)(1), and "to promote domestic commercial and recreational fishing under sound conservation and management principles," *id.* § 1801(b)(3). To do so, Congress created a decisionmaking structure to provide "for the preparation and implementation . . . of fishery management plans which will achieve and maintain, on a continuing basis, the optimum yield from each fishery," *id*. § 1801(b)(4), and laid out principles to guide their management, *id.* §§ 1851-1856.

The Magnuson-Stevens Act vests responsibility for managing the nation's fisheries in the Secretary: "The Secretary shall have general responsibility to carry out any fishery management plan or amendment approved or prepared by him," and "may promulgate such regulations, … as may be necessary to discharge such responsibility or to carry out any other provision of this chapter." *Id.* § 1855(d). Congress created the Regional Fishery Management Councils to advise the Secretary on regional fishery management. *See id.* § 1852(a)(1). Each Council is responsible for advising on a specific geographic region and consists of federal officials, state officials, and individuals with regional fisheries expertise appointed by the Secretary. *Id.* § 1852(a), (b). Congress established the Councils to "enable the States, the fishing industry, consumer and

3

environmental organizations, and other interested persons to participate in, and advise on, the establishment and administration of" FMPs so that they "take into account the social and economic needs of the States." *Id.* § 1801(b)(5).

The Magnuson-Stevens Act's process begins with FMPs. These FMPs identify the "conservation and management measures" "necessary and appropriate for the conservation and management of the fishery, to prevent overfishing and rebuild overfished stocks, and to protect, restore, and promote the long-term health and stability of the fishery." *Id.* § 1853(a)(1)(A). The Act establishes plan requirements, *id.* § 1853(a)(1)-(15). For example, to address overfishing, FMPs must establish mechanisms for annual catch limits (ACLs) and accountability measures (AMs). *Id.* § 1853(a)(15). The Act also identifies other, optional elements. *Id.* § 1853(b)(1)-(14). FMPs must be consistent with ten broadly written National Standards Congress enacted to govern fisheries conservation and management. *Id.* 1853(a)(1)(C). These standards reflect the complex tradeoffs between sustainability and economic development central to fisheries conservation and management. *See id.* § 1851(a). The Act further requires the Secretary to "establish advisory guidelines …, based on the national standards, to assist in the development of fishery management plans." *Id.* § 1851(b).

Congress created a structured process for establishing, modifying, and implementing FMPs that ordinarily begins with recommendations from Regional Councils. *See id.* §§ 1852(h)(1), 1853, 1854(a)-(b). Councils "prepare and submit to the Secretary" proposed FMPs for any fishery in their region that requires conservation and management, and such plan amendments as "are necessary from time to time." *See id.* § 1852(h)(1). When the Secretary receives a Council-recommended FMP or amendment, the Secretary reviews it, including "to determine whether it is consistent with the national standards, the other provisions of [the

4

Magnuson-Stevens Act], and any other applicable law," *id.* § 1854(a)(1)(A), and then publishes a notice of availability soliciting public comment, *id.* § 1854(a)(1)(B). After "tak[ing] into account the information, views, and comments received from interested persons," *id*. § 1854(a)(2)(A), the Secretary decides whether to "approve, disapprove, or partially approve" the plan or amendment "by written notice to the Council." *Id.* § 1854(a)(3). If the Secretary "disapproves or partially approves a plan or amendment, the Council may submit a revised plan or amendment to the Secretary for review." *Id.* § 1854(a)(4).

The Secretary, on her own, may prepare an FMP or "necessary amendment" without a Regional Council proposal if the Council fails to develop and submit a plan required for fishery conservation or management in "a reasonable period of time," or if the Secretary disapproves of the plan submitted and the Council fails to appropriately revise it. *Id.* § 1854(c)(1)(A). The Secretary must "conduct public hearings" to gather input, *id.* § 1854(c)(2)(A), and solicit comments from the relevant Council and the public, *id.* § 1854(c)(4). After considering any comments, the Secretary may adopt the plan or amendment. *Id.* § 1854(c)(5). The Secretary, also on her own, prepares FMPs for highly migratory species. *Id.* § 1854(g). FMPs are not self-executing—they are not enforceable without implementing regulations. *See N.C. Fisheries Ass'n v. Gutierrez*, 550 F.3d 16, 17 (D.C. Cir. 2008). The plans alone "do not themselves have any regulatory effect" and thus create no legally binding obligations for fishery participants. *Id*; *Gulf Restoration Network v. NMFS*, 730 F. Supp. 2d 157, 166, 173 (D.D.C. 2010) (same)*.

Like FMPs, proposed implementing regulations may originate with either the Regional Council or the Secretary. If the Council believes regulations would be "necessary or appropriate" to implement an FMP or amendment, the Council may submit proposed regulations to the Secretary together with its proposed FMP or amendment. 16 U.S.C. § 1853(c). The Secretary

reviews the proposed regulations, including for consistency with the relevant FMP, the Magnuson-Stevens Act, and any other applicable law, and, if appropriate, publishes a proposed rule, solicits public comment, and ultimately decides what to promulgate as a final rule. *Id.* § 1854(b). The Secretary may decline to publish the proposed rule, returning it to the Council for a revised proposal, *see id.* § 1854(b)(1)(B), or revise the proposed regulations herself after "consult[ing] with the Council" and publishing "an explanation of any differences between the proposed and final regulations" in the Federal Register, *id.* § 1854(b)(3).

The Secretary may also originate regulations. She may "propose regulations in the Federal Register to implement any [FMP] or amendment" she prepared. *Id.* § 1854(c)(6). She must submit the proposed regulations to the Council and open a comment period. *Id.* After the comment period closes, she may issue final regulations. *Id.* § 1854(c)(7). The Secretary also has general authority to "promulgate such regulations … as may be necessary" to discharge her responsibilities under the Act. *Id.* § 1855(d). The Secretary can also promulgate "emergency regulations or interim measures" that she finds "necessary to address [an] emergency or overfishing." *Id.* § 1855(c)(1). Federal fishery measures bind fishery participants only after the Secretary promulgates final implementing regulations. Regional Councils cannot promulgate regulations. *See id.* §§ 1852, 1854, 1855; *J.H. Miles & Co. v. Brown*, 910 F. Supp. 1138, 1159 (E.D. Va. 1995); *Gen. Category Scallop Fishermen v. U.S. Dep't of Com.*, 635 F.3d 106, 112 n.15 (3d Cir. 2011).

The Secretary has delegated her Magnuson-Stevens Act authorities to the Under Secretary of Commerce for Oceans and Atmosphere, who oversees NOAA. Departmental Organizational Order 10-15 (DOO 10-15) § 3.01(aa)(4) (Dec. 12, 2011), https://www.commerce.gov/opog/directives/DOO_10-15 (last visited Jan. 10, 2025). The Under Secretary has in turn

delegated those authorities to the Assistant Administrator, currently Janet Coit, who oversees NMFS. DOO 10-15 § 3.05; NOAA Organizational Handbook, Transmittal No. 61, Part II(C)(26) (Feb. 24, 2015), *see* https://www.noaa.gov/sites/default/files/legacy/document/2020/Mar/ transmittal-61.pdf (last visited Jan. 10, 2025). The Assistant Administrator is a duly appointed inferior officer of the United States. *See* Reorganization Plan No. 4 of 1970, 84 Stat. 2090, 2091 (1970) (The Assistant Administrator "shall be appointed by the Secretary, subject to the approval of the President."). She has the authority to promulgate regulations under the Magnuson-Stevens Act.[1] *See Massachusetts v. Pritzker*, 10 F. Supp. 3d 208, 212 n.4 (D. Mass. 2014).

## FACTUAL BACKGROUND

Plaintiffs challenge NMFS's Final Rule implementing Amendment 56 to the Gulf of Mexico Reef Fish FMP. AR011539[2] (89 Fed. Reg. 40419 (May 10, 2024)). Amendment 56 revises measures related to Gulf of Mexico gag grouper.

### I.     Gag Grouper

Gulf of Mexico gag grouper is found primarily off the western coast of Florida. *See* AR011539. Juvenile gag grouper depend on estuarine environments, which are bodies of water with an open connection to the sea that typically experience a mixing of sea and fresh water. *See id.* As the fish mature, they tend to move to deeper offshore waters to live and spawn. *Id.* The spawning season in the Gulf of Mexico ranges from January to mid-April. AR010482. Gag grouper are known to have lived as long as 33 years; they can grow as long as 54 inches and

---

[1] The ministerial task of signing approved regulations for purposes of publication in the Federal Register has been delegated to the Deputy Assistant Administrator for Regulatory Programs. NOAA Organizational Handbook, Transmittal No. 61, Part III.

[2] Citations to the Administrative Record are noted by the letters AR and a page cite corresponding to the Bates number found on the bottom right corner of the page(s).

weigh as much as 68 pounds. *Id.* The image below of a gag grouper is taken from NMFS's website. *See* https://www.fisheries.noaa.gov/species/gag-grouper (last visited Jan. 10, 2025).



## II.    Management of Gag Grouper in the Gulf

Gulf of Mexico gag grouper is managed as a single stock. The ACL for this stock is divided between two sectors—commercial and recreational. AR010539. In the Magnuson-Stevens Act, Congress defined commercial fishing as "fishing in which the fish harvested, either in whole or in part, are intended to enter commerce or enter commerce through sale, barter or trade," and recreational fishing as "fishing for sport or pleasure." 16 U.S.C. § 1802(4), 1802(37). Prior to Amendment 56, the commercial sector received 39 percent of the overall ACL, and the recreational sector received 61 percent. AR011539.

In 2005, the Council proposed, and NMFS approved, a permanent limited access system for the commercial sector. 70 Fed. Reg. 41161 (July 18, 2005). A limited access system is one that "limits participation in a fishery to those satisfying certain eligibility criteria or requirements contained in a fishery management plan or associated regulation." 16 U.S.C. § 1802(27). Since 2010, this commercial fishing system for gag grouper has been governed by an individual fishing quota (IFQ) program that covers gag grouper and tilefish. AR011539. An IFQ is "a Federal permit under a limited access system to harvest a quantity of fish, expressed by a unit or units representing a percentage of the total allowable catch of a fishery that may be received or held

for exclusive use by a person." 16 U.S.C. § 1802(23). Under the IFQ program, NMFS distributes the commercial quota on January 1 each year to those holding shares. AR011539. Prior to Amendment 56, the commercial quota was 23 percent less than the commercial ACL. *Id.*

For the recreational sector, prior to Amendment 56, NMFS set an annual catch target (ACT) that was approximately 10 percent lower than the recreational ACL. *Id.* Rather than a quota allocated to shareholders at the start of each calendar year, recreational harvest is managed through accountability measures (AMs), seasonal and area closures, and size and possession limits. AR011539-40. The AMs required NMFS to prohibit harvest for the rest of the year whenever the ACL was reached, and, if gag grouper was overfished, any exceedance of the ACL was deducted from the following year's ACL and ACT. AR011541-42. If the ACL was exceeded, then NMFS had to maintain the prior year's ACT and set the fishing season duration based on the ACT rather than the ACL. *Id.* Previously, the recreational fishing season was open from June 1 to December 31, unless NMFS determined that an earlier closure was necessary to constrain harvest to the ACL or ACT, as applicable. AR011542.

## III.    Amendment 56

A stock assessment of gag grouper in the Gulf of Mexico was completed in 2021. AR011540. That assessment concluded that the stock was overfished and undergoing overfishing.[3] *Id.* In October 2022, NMFS notified the Gulf Council about the overfished status and the ongoing overfishing. *Id.* Both NMFS and the Gulf Council realized that an amendment to the existing management framework for gag grouper could not be completed until 2024, but that maintaining the status quo until then would cause further declines in the stock. *Id.* Accordingly,

---

[3] The terms "overfished" and "overfishing" mean "a rate or level of fishing mortality that jeopardizes the capacity of a fishery to produce the maximum sustainable yield on a continuing basis." 16 U.S.C. § 1802(34).

in July 2022, the Gulf Council requested interim measures that would reduce the ACL and shorten the recreational fishing season. *Id.* NMFS agreed and implemented the measures in 2023. 88 Fed. Reg. 27701 (May 3, 2023).

While the interim measures were being developed and implemented, the Gulf Council and NMFS also worked on Amendment# 56. The Council approved the proposed amendment at its June 2023 meeting and then transmitted it to NMFS. AR010426. The agency identified areas for clarification, and a revised proposal was transmitted to NMFS in September 2023. *Id.*; AR010427-680. The following month, NMFS published in the Federal Register a notice of the availability of Amendment 56 and requested public comment. AR010893 (88 Fed. Reg. 71812 (Oct. 18, 2023)). In November 2023, NMFS published a Proposed Rule to implement Amendment 56. AR011053-63 (88 Fed. Reg. 77246 (Nov. 9, 2023)). NMFS subsequently approved Amendment 56 in January 2024 after considering comments received. AR011176.

On May 10, 2024, NMFS issued the Final Rule. AR011539-56. Amendment 56 and the Final Rule established a rebuilding plan for gag grouper, which decreased the stock catch limits. AR010456-57; AR011540. The Amendment and Rule also revised the allocation of catch between the commercial and recreational sectors, which further modified the sector ACLs. AR010456-57; AR011541-42. Under Amendment 56, the split between the commercial and recreational sectors is 35 percent and 65 percent, respectively. AR011541. This modified distribution reflected the historic landings for each sector. *Id.* For the commercial sector, the Rule revised the commercial quota—which is then subdivided among the IFQ shareholders—to an amount approximately 5 percent lower than the applicable commercial ACL, instead of 23 percent lower. *Id.* This shift stemmed from substantial improvements in the estimation of

commercial landings and discards.[4] *Id.* Over the next five years, the commercial ACL is scheduled to increase from 155,000 pounds in 2024 to 404,000 pounds in 2028. *Id.*

For the recreational sector, Amendment 56 and the Final Rule doubled the buffer between the ACT and ACL, which means the buffer increased to 20 percent. *Id.* This alteration was intended to account for the uncertainty in managing recreational harvest and to help reduce mortality and discards. *Id.* Over the next five years, the recreational ACL is scheduled to increase from 288,000 pounds in 2024 to 751,000 pounds in 2028. *Id.* The Final Rule also modified the recreational AMs and fishing season. The agency is now required to prohibit harvest when the ACT is projected to be met. AR011542. In conjunction with the increased buffer between ACL and ACT, this adjustment is expected to decrease the likelihood that the ACL will be exceeded. *Id.* Moreover, the fishing season now begins on September 1, rather than June 1. *Id.*

NMFS's Final Rule also responded to public comments received on the Proposed Rule. AR011543-50. No public comments discussed the constitutional law issues raised by this case.

## STANDARD OF REVIEW

The Magnuson-Stevens Act authorizes judicial review of regulations implementing an FMP in accordance with Sections 706(2)(A)-(D) of the Administrative Procedure Act (APA). 16 U.S.C. § 1855(f)(1). Under these sections of the APA, a court may set aside agency regulations if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; "contrary to constitutional right, power, privilege, or immunity"; "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right"; or "without

---

[4] An economic discard is a fish that is the target of a fishery but is not retained because it is an undesirable size, sex, or quality, or for other economic reasons. 16 U.S.C. § 1802(9). A regulatory discard is a fish that a fisherman is required to discard by regulation whenever caught, or a fish that a fisher is required to retain by regulation but not sell. *Id.* § 1802(38).

observance of procedure required by law." 5 U.S.C. § 706(2)(A)-(D). In assessing agency action

against these standards, a court should "decide all relevant questions of law, interpret

constitutional and statutory provisions, and determine the meaning or applicability of the terms

of an agency action." *Id.* Summary judgment "serves as the mechanism for deciding, as a matter

of law, whether the agency action is supported by the administrative record and otherwise

consistent with the standard of review." *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of

Eng'rs*, 354 F. Supp. 3d 1253, 1267 (N.D. Ala. 2018) (citation omitted).

## ARGUMENT

Plaintiffs' Appointments Clause challenge fails because only the Secretary (through the

Assistant Administrator, the Secretary's delegee and a properly appointed inferior officer)

exercises "significant discretion" in "carrying out [] important functions" to execute federal

fishery management policy. *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 882 (1991).

Councils are advisory bodies; they lack authority to take any action binding fishery participants.

But authority to execute or administer the law is a necessary element for officer status, including

in the cases Plaintiffs cite. The Act vests authority to issue binding regulations solely in the

Secretary, and the Secretary's exclusive authority to give federal fishery policies legal effect is

dispositive. If there were any question, the Court must read the Act to avoid constitutional

doubts. The Final Rule is lawful, and its adoption was consistent with the Appointments Clause.

**I.     Congress Gave the Secretary the Final Word on FMPs and the Exclusive Authority
         to Promulgate Regulations.**

The Magnuson-Stevens Act gives the Secretary "broad authority to manage and conserve

coastal fisheries." *Kramer v. Mosbacher*, 878 F.2d 134, 135 (4th Cir. 1989). Indeed, Congress

assigned the Secretary "general responsibility to carry out any fishery management plan or

amendment approved or prepared by [her]" and authorized her to "promulgate such regulations"

"as may be necessary to discharge such responsibility or to carry out any other provision of this [Act]." 16 U.S.C. § 1855(d). This broad authority shows that the Secretary is ultimately responsible for executing the Act's requirements, assuring the political accountability with which the Appointments Clause is concerned.

Congress also recognized the importance of fisheries to state and local economies; the differences among regional fisheries in terms of participants, ecosystems, and environmental challenges; and the need for coordination between federal and state agencies managing a resource that can swim between federal and state waters.[5] Congress therefore established a structured process to inform the Secretary of state and regional interests when setting policy. Yet the Magnuson-Stevens Act establishes Regional Councils as advisory bodies only.

### A. The Statute's Terms Do Not Limit the Secretary's Review.

When a Regional Council recommends an FMP or amendment, the Secretary has full discretion to "approve, disapprove, or partially approve" the Council's proposal. 16 U.S.C. § 1854(a)(3). If the Secretary "disapproves or partially approves a plan or amendment, the Council may submit a revised plan or amendment to the Secretary for review." *Id.* § 1854(a)(4). The Act also empowers the Secretary to prepare FMPs or amendments herself without a Council proposal if the Council fails to timely submit a plan or if the Secretary disapproves the plan submitted. *Id.* § 1854(c).

The statute does not limit the factors the Secretary may consider in deciding whether to approve, disapprove, or partially approve FMPs. To be sure, the Magnuson-Stevens Act requires the Secretary to review Council-recommended FMPs and amendments for consistency "with the

---

[5] States typically have authority to regulate fishing activities within three miles of shore. 16 U.S.C. § 1802(11); 43 U.S.C. §§ 1301, 1312.

national standards, the other provisions of [the Act], and any other applicable law."[6] *See*
16 U.S.C. § 1854(a)(1); *id.* § 1854(a)(3) (upon disapproval or partial disapproval of an FMP or
amendment, requiring the Secretary to specify the "applicable law" with which the proposal is
inconsistent and "recommend[]" how the Council might conform the action to that law). But it
does not follow that the Act requires the Secretary to rubberstamp Council recommendations
unless they violate an express legal requirement. *See Lofstad*, 117 F.4th at 500 (adopting this
"reasonable reading").

### B. The Statute Assigns Fishery Management Councils Only an Advisory Role.

The primary function Congress assigned Regional Councils is to "prepare and submit"
proposals to the Secretary. *See* 16 U.S.C. § 1852(h)(1). But these proposals are just that—
proposals. The Secretary remains free to approve or disapprove of Council-recommended FMPs
or amendments and to adopt or alter Council-proposed regulations. *Id.* § 1854(a)(3). The Act
gives Councils no authority to take actions that have legal effects or impose legal obligations on
any fishery participant. Legal obligations instead flow from the Secretary's decision to issue
regulations. *Id.* § 1854(b).

Both textual and structural features of the Magnuson-Stevens Act confirm the Regional
Councils' advisory role. To begin with, Congress twice indicates in the Act's text that it intended
Councils to perform an advisory function. Plaintiffs do not address these textual features. First,
the Act explains that Congress established Councils to "enable the States, the fishing industry,
consumer and environmental organizations, and other interested persons to participate in, and
*advise on*, the establishment and administration of" fishery management plans in a manner that

---

[6] Other applicable law includes the Endangered Species Act, Marine Mammal Protection Act,
National Environmental Policy Act, and tribal treaty rights. See NOAA, Magnuson-Stevens Act
Process, at pdf p. 31 (Table X), https://perma.cc/H7SV-3QS9 ((last visited Jan. 10, 2025.)

"take[s] into account the social and economic needs of the States." 16 U.S.C. § 1801(b)(5) (emphasis added). Second, Congress expressly excluded Councils from Federal Advisory Committee Act requirements, *id.* § 1852(i)(1), indicating Congress believed the Councils would otherwise be subject to them. This exclusion would be surplusage if Congress thought it was assigning Councils significant authority, rather than advisory functions. "A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous." *Clark v. Rameker*, 573 U.S. 122, 131 (2014) (cleaned up).

The Magnuson-Stevens Act's structure also shows that the Secretary has ultimate authority over the substance of any FMP, amendment, and regulations. The Act requires that Council-proposed FMPs, amendments, and regulations undergo notice and comment before the Secretary finalizes them, *see* 16 U.S.C. § 1854(a)(1)(B) & (b)(1)(A), and requires the Secretary to "take into account the information, views, and comments received from interested persons," *id.* § 1854(a)(2)(A). That would be pointless if the Secretary lacked discretion to make decisions informed by the comments received. The limits that Congress placed on judicial review— confining it to "[r]egulations promulgated *by the Secretary*" and "actions that are taken *by the Secretary* under regulations which implement a fishery management plan," *see id.* § 1855(f)(1)-(2) (emphasis added)—likewise reflect Congress's understanding that only the Secretary, and not Regional Councils, can bind fishery participants in a manner that might require judicial redress.

The Secretary remains politically accountable for any regulations. This serves the central aim of the Appointments Clause: "Without a clear and effective chain of command, the public cannot 'determine on whom the blame or the punishment of a pernicious measure … ought really to fall.'" *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 498 (2010) (quoting The Federalist No. 70 at 476 (J. Cooke ed. 1961) (A. Hamilton)). Only the Secretary can decide

to impose legal obligations on fishery participants, and there is "a clear and effective chain of command" to the Secretary "from the President, on whom all the people vote." *United States v. Arthrex, Inc.*, 594 U.S. 1, 11 (2021) (citation omitted). Here, there is no diffusion of accountability, because all the Act's legal authority is vested in a principal officer, the Secretary.

### C. Council Members Are Not Officers of the United States.

The Appointments Clause provides that the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint … all [] Officers of the United States" not otherwise addressed in the Constitution, but that "Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. 2, § 2, cl. 2. To qualify as an officer, an individual must "occupy a 'continuing' position established by law" and exercise "significant authority pursuant to the laws of the United States." *Lucia v. Sec. & Exch. Comm'n*, 585 U.S. 237, 245 (2018) (cleaned up).

Council members do not meet these requirements and are not officers. Even assuming members occupy a "continuing" position, despite their temporary and episodic duties,[7] none of the functions the Magnuson-Stevens Act assigns to Councils involves the exercise of significant federal authority. As discussed above, the Councils' role is advisory only, and "an individual who occupies a purely advisory position … does not hold a position with delegated [] authority of the federal government and therefore does not hold a federal office." *See* Memorandum Opinion for General Counsels of the Executive Branch from Steven G. Bradbury, *Officers of the United States Within the Meaning of the Appointments Clause*, 31 Op. O.L.C. 73, 77 (2007).

---

[7] The Gulf Council typically meets a handful of times each year, with each meeting lasting just four days. *E.g.*, AR000001; AR000795; AR001600; AR001947; AR002453.

Regional Councils cannot limit, circumscribe, or control the Secretary's ability to regulate fisheries. *See supra* at 14-16. Instead, the Secretary retains final say over the contents of any approved FMPs or promulgated regulations. That only the Secretary—and not the Councils—can undertake sovereign acts executing or administering federal fishery management measures is dispositive. "Significant authority" is modern shorthand for meaningful discretion to exercise significant sovereign powers of the United States. Going back to the founding and English common law, a position becomes an "office" only when it is vested with significant discretion to exercise such authorities. *See* 31 Op. O.L.C. 73, 78-87. An early opinion from the Supreme Judicial Court of Maine, for instance, explained that "the term 'office' implies a delegation of a portion of the sovereign power to, and possession of it by the person filling the office." *Opinion of the Justices*, 3 Greenl. (Me.) 481, 482 (1822). Therefore "every 'office,' in the constitutional meaning of the term, implies an authority to exercise some portion of the sovereign power, either in making, executing or administering the laws." *Id.* at 483.

There is no sense in which Regional Councils are invested with the sovereign functions of the federal government. Many courts have therefore recognized that Councils play an advisory role far short of exercising significant authority. *E.g.*, *Lofstad*, 117 F.4th at 500-01; *see also United Cook Inlet Drift Ass'n v. NMFS*, No. 3:21-cv-00247-JMK, 2022 WL 2222879, at *19 (D. Alaska June 21, 2022) (explaining that Regional Councils "are simply advisory bodies and have no legal authority"); *Goethel v. Pritzker*, No. 15-CV-497-JL, 2016 WL 4076831 (D.N.H. July 29, 2016) (reiterating that plan amendments cannot establish rights, obligations, or legal consequences without implementing regulations, which only the Secretary can promulgate), *aff'd on other grounds, Goethel v. U.S. Dep't of Com.,* 854 F.3d 106 (1st Cir. 2017); *J.H. Miles*, 910 F. Supp. at 1157-59 (finding that Councils have "no 'authority' to do anything[,]" and final

decision-making power rests with NMFS). While Councils are "heavily involved" in developing FMPs and proposing regulations, they lack authority to take final action, and so the structure of the Magnuson-Stevens Act "reinforces the advisory nature of the Council's role." *Flaherty v. Ross*, 373 F. Supp. 3d 97, 104-10 (D.D.C. 2019).

**D. Plaintiffs Misconstrue the Role of Councils in the Process for Approving FMPs and Promulgating Regulations.**

Each of Plaintiffs' four arguments for why the Gulf Council exercises significant authority lacks merit. Doc. 30 (Pls.' Br.) at 13-19. First, Plaintiffs contend that the Gulf Council has "exclusive policymaking power over Gulf of Mexico fisheries in federal waters." *Id.* at 13. This is mistaken and ignores the policymaking role of the Secretary. Although the Magnuson-Stevens Act creates procedural requirements the Secretary follows before establishing and implementing federal fisheries policies, these *procedures* do not constrain the Secretary's judgment on *substance*—that is, on how best to conserve and manage federal fisheries consistent with Congress's direction. The Secretary may have to consider a Council's proposal before taking action—at least absent an emergency, unreasonable delay, or other necessity—but she never has to uncritically accept the Council's recommendations. Plaintiffs read limitations on the Secretary's review that are not in the text. The specific authorities the Act assigns the Secretary when evaluating and implementing Council proposals show her independent discretion on policy. *See* 16 U.S.C. § 1854(a)(3), (b)(3).

With respect to FMPs and plan amendments, Plaintiffs assert that "NMFS must approve any Council FMP or amendment that does not violate the law." Pls.' Br. at 14. But that is not what the statute says. It says only that "[t]he Secretary *shall approve, disapprove, or partially approve* a plan or amendment within 30 days." *See* 16 U.S.C. § 1854(a)(3) (emphasis added). This language does not cabin the Secretary's discretion. While Section 1854(a)(3) does require

that the Secretary's notice of disapproval or partial approval "specify … the applicable law with which the plan or amendment is inconsistent," it does not say that the Secretary must approve absent such an inconsistency. This conclusion is only underscored by comparing Section 1854(b)(1), which governs when the Secretary must solicit public comment on proposed rules, to Section 1854(a)(3). Section 1854(b)(1) specifies that the Secretary shall initiate an evaluation of the proposed regulations to determine consistency and "if that determination is affirmative, the Secretary shall publish" the proposal for public comment.[8] This language—which differs from Section 1854(a)(3)—shows Congress knew how to prescribe a particular manner of review.

Moreover, even if Plaintiffs were correct that the Magnuson-Stevens Act limits review of Council-proposed FMPs or amendments to consistency "with the national standards, the [Magnuson-Stevens Act], and any other applicable law," 16 U.S.C. § 1854(a)(1), the Secretary— not the Councils—would still retain ultimate policymaking discretion when approving FMPs or amendments. Evaluating whether an FMP or amendment is consistent with the National Standards is an inherently policy-laden judgment that necessarily involves significant discretion. The questions the Secretary must resolve to evaluate consistency with the National Standards[9] show that she is responsible and accountable for policy decisions embedded in any FMP or amendment. For example, National Standard 1 requires preventing overfishing while achieving, on a continuing basis, "optimum yield," which is determined based on the maximum sustainable yield, as reduced by "any relevant economic, social, or ecological factor." 16 U.S.C. §

---

[8] This provision addresses only the publication of a proposed rule, not the adoption of binding regulations, and it does not include the sort of consequences that courts usually require to find such mandatory-seeming language directed at public officials to be enforceable rather than stating a procedural condition. *See McIntosh v. United States*, 601 US. 330, 336-341 (2024).

[9] As required by the Act, the Secretary has promulgated guidelines describing her interpretation of the National Standards after notice and comment. *See* 16 U.S.C. § 1851(b); 50 C.F.R. § 600.305-600.355.

1851(a)(1); 50 C.F.R. § 600.310(e)(3)(i). Achieving "optimum yield" requires providing for rebuilding and "balancing the various interests that comprise the greatest overall benefits to the Nation," "particularly with respect to food production and recreational opportunities, and taking into account the protection of marine ecosystems." 50 C.F.R. §§ 600.310(e)(3)(i), (b)(2)(ii). Thus, assessing whether Council-recommended proposals are consistent with the Standards depends on balancing competing interests.

Courts have repeatedly recognized the Secretary's "discretion and judgment" in reconciling the disparate concerns contained within the National Standards. *See State of New York v. Raimondo*, 84 F.4th 102, 107 (2d Cir. 2023) ("The national standards' expansive text and structure reflect that Congress intended for *NMFS* to use discretion and judgment to reconcile this tension when managing the fishery." (emphasis added) (cleaned up)); *Lovgren v. Locke*, 701 F.3d 5, 32 (1st Cir. 2012) ("The purposes of the national standards are many, and can be in tension with one another. … Compliance with the national standards requires balancing *by the agency* and the exercise of discretion and judgment." (emphasis added)); *All. Against IFQs v. Brown*, 84 F.3d 343, 349-50 (9th Cir. 1996) ("Congress required *the Secretary* to exercise discretion and judgment in balancing among the conflicting national standards[.]" (emphasis added)). The Magnuson-Stevens Act gives "NMFS rulemaking flexibility to react to dynamic natural conditions and account for multiple stakeholders." *State of New York*, 84 F.4th at 107. The language Congress uses—"optimum," "where practicable," "minimize," "take into account"—presumes the Secretary's exercise of discretion and judgment. *See Conservation L. Found. v. Ross*, 374 F. Supp. 3d 77, 91 (D.D.C. 2019).

Unlike the Secretary, the Council has no authority to execute or administer the laws of the United States, much less exercise significant discretion in doing so. *Contra* Pls.' Br. at 15

(contending that the Council "can do everything to make policy"). While the Council may "prepare and submit" proposals to the Secretary, 16 U.S.C. § 1852(h)(1), only the Secretary can determine their final content and put sovereign weight behind them. *See supra* at 12-16. The Councils' inability to impose legally enforceable obligations on fishery participants distinguishes them from officials found to violate the Appointments Clause, which severely undermines Plaintiffs' effort to shoehorn this case into *Lucia* and *Freytag*. *See* Pls.' Br. at 15; *New Eng. Fishermen's*, 2024 WL 5247893, at *53 ("the officials deemed federal officers in those two cases wielded substantially different authority than the policy development role of Council Members").

The administrative law judges in *Lucia*, for example, "exercise[d] significant discretion" in "tak[ing] testimony, conduct[ing] trials, rul[ing] on the admissibility of evidence, and … enforc[ing] compliance with discovery orders." 585 U.S. at 247 (citation omitted). The Court found them to be officers because they wielded "nearly all the tools of federal trial judges" in proceedings against private parties. *Id.* In fact, they issued decisions that could be "deemed the action of the Commission" and that resolved legal matters without further review. *Id.* at 249. This "last-word capacity" was central to the court's ruling in *Lucia*. *Id.*

Similarly, the Tax Court special trial judges in *Freytag* had "the power to enforce compliance with discovery orders," 501 U.S. at 881-82, and to "punish contempts by fine or imprisonment," *id.* at 891. In light of the special trial judges' role within the Tax Court, the government conceded that they acted as inferior officers in cases in which they could enter final decisions. *Id.* at 882. The Supreme Court accepted that concession from the government and concluded that "[s]pecial trial judges are not inferior officers for purposes of some of their duties under [the statute] but mere employees with respect to other responsibilities." *Id.* Thus, the special trial judges' final decision-making authority was significant to the Court's decision.

Plaintiffs incorrectly contend that *Freytag* is analogous because there is one type of special tax judge decision that is subject to review by a tax judge, like the Council decisions are subject to NMFS review. Pls.' Br. at 15. But in that case, unlike the Councils, the special trial judges did issue final decisions on some matters. Simply recommending proposals to duly authorized decisionmakers does not require *any* sovereign powers of the United States, and so does not rise to the level of exercising significant discretion executing federal authority. "[M]erely render[ing] assistance to another in the performance of [the] functions [of government]" does not entail significant authority. *See* Bradbury Memo, 31 Op. O.L.C. at 98.

The decision in *Buckley v. Valeo*, 424 U.S. 1, 109 (1976), is also inapposite. There, the Supreme Court found that Federal Election Commission members were officers under the Appointments Clause because they had "primary and substantial responsibility for administering and enforcing the [Federal Election Campaign] Act," including extensive rule making and adjudicative powers, as well as record-keeping, disclosure, and investigative functions. *Id.* The Commission members had "primary responsibility for conducting civil litigation in the courts of the United States" and, unlike Regional Councils, they had "broad administrative powers" of "rulemaking." *Id.* at 140. The Councils lack any rulemaking powers. Thus, Council members do not wield "'significant discretion' when carrying out 'important functions.'" *Lucia*, 585 U.S. at 248.

Lastly, Plaintiffs' brief includes several quotes from an interview given by Deputy Assistant Administrator Rauch in 2016. *See*, *e.g.*, Pls.' Br. at 13, 15. This interview is not in the Administrative Record, and thus falls outside the scope of judicial review. *See Pres. the Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 (11th Cir. 1996). Even if the Court considers this interview, which it should not, the comments

are inconsistent with the Executive Branch's long-standing interpretation and implementation of the Magnuson-Stevens Act,[10] are not authoritative, and should be disregarded.

Second, Plaintiffs contend that "NMFS cannot act until the Council initiates the process." Pls.' Br. at 13. This bald assertion is rebutted by the plain text of the Act. The Secretary wields significant authority to, *inter alia*, prepare her own FMP when a Council fails to develop one, as well as for highly migratory species. *See* 16 U.S.C. § 1854(c), (g). This work is independent of the Council. Plaintiffs' brief includes a footnote that directly undercuts their argument. Pls.' Br. at 16 n.5. They admit that NMFS can exercise "unilateral rulemaking powers." *Id.* And they incorrectly attempt to limit that power to Section 1854(c), which overlooks Section 1854(g).

Third, Plaintiffs misinterpret key aspects of the statutory scheme when they suggest that the Gulf Council's decisions with respect to FMPs and regulations "have independent effect." Pls.' Br. at 16-18. To begin, Plaintiffs errantly rely on the final paragraph of 16 U.S.C. § 1854(a)(3), which provides that a "plan or amendment shall take effect as if approved" if the Secretary does not "notify a Council within 30 days of the end of the comment period" of her approval, disapproval, or partial approval. *See* Pls.' Br. at 16. Setting aside the Secretary's ability to stop this from happening by simply acting on the FMP or amendment, this provision does not convey significant authority to the Council because FMPs and amendments have no legal effect

---

[10] The Executive Branch has long understood the Councils' role to be wholly advisory and has implemented the Magnuson-Stevens Act accordingly. *See* President Trump Signing Statement on 2018 Amendments to Magnuson-Stevens Act, 2018 WL 6839393 (Dec. 31, 2018) ("Keeping with past practice of the executive branch, my Administration will treat the plans promulgated by the Council *as advisory only*; the adoption of the plans will be subject to the discretion of the Secretary of Commerce as part of the regulatory process described in … the [Magnuson-Stevens Act]." (emphasis added)); President Bush Signing Statement on the 2006 Magnuson-Stevens Reauthorization Act, 2007 U.S.C.C.A.N. S83, 2007 WL 892712 (Jan. 12, 2007); President Clinton Signing Statement on the 1996 Sustainable Fisheries Act, 1996 U.S.C.C.A.N. 4120, 1996 WL 787969 (Oct. 11, 1996).

on fishery participants on their own and must be implemented through the APA rulemaking process that only the Secretary can carry out. *See N.C. Fisheries*, 550 F.3d at 17 (noting that FMPs "do not themselves have any regulatory effect"). Plaintiffs have conflated the "take effect" language from the Magnuson-Stevens Act with the phrase "independent effect" from *Lucia*. Pls.' Br. at 17. But an FMP cannot have "independent effect" because it does not, in and of itself, bind fishery participants.

Plaintiffs' assertions about the regulations that implement FMPs, including the concept of consultation with the Council, are also weak. *Id.* at 17-18. The Secretary has ultimate discretion over the contents of any implementing regulations. The Act does not limit her authority to revise a Council's proposal, but instead includes only procedural requirements to consult with the Council and explain any changes. *See* 16 U.S.C. § 1854(b)(3). The power to alter a proposed rule before it binds fishery participants "rests only with the Secretary." *Fishing Co. of Alaska v. Gutierrez*, 510 F.3d 328, 333 (D.C. Cir. 2007) (citing 16 U.S.C. § 1854(b)(3)) ("The Council is free to submit comments on a proposed rule (as are others), but power to alter the rule before it becomes final rests only with the Secretary."). A final rule—and thus the Secretary's decision to revise (or not revise) a proposed rule—may be declared invalid only if "the Secretary acts in an arbitrary and capricious manner in promulgating [the] regulations." *Alaska Factory Trawler Ass'n v. Baldridge*, 831 F.2d 1456, 1460 (9th Cir. 1987).

Plaintiffs suggest that, by requiring the Secretary to consult with the Council before finalizing a rule departing from a Council proposal and requiring the Secretary to issue final regulations within 30 days after the comment period ends, *see* 16 U.S.C. § 1854(b)(3), Congress meant to give Councils a back-door mechanism to compel the Secretary to issue its proposed rule without changes. In Plaintiffs' view, "the Council can deny consultation for that 30-day period"

and then NMFS must promulgate the Council's proposed regulation without revision. Pls.' Br. at 18. This strawman argument finds no footing in the actual text of the Act. Congress did not, by directing NMFS to attempt consultation, give Councils a pocket veto. *See Lofstad*, 117 F.4th at 500 ("The consultation requirement does not give the Council a back door to force its proposals into law."). Absent any contrary statutory direction, the Secretary completes her obligation to "consult" under section 1854(b)(3) once she solicits Council input and offers an opportunity to respond. Nothing stops her from acting if the Council fails to respond.

Plaintiffs' argument misrepresents the government's position in another district court matter[11] and ignores governing law. "Time-related directives seek speed by directing a … public official to act by a certain time. Missing that kind of deadline does not deprive the official of the power to take the action to which the deadline applies." *McIntosh*, 601 U.S. at 339. The Magnuson-Stevens Act does not compel the Secretary to promulgate a rule with which she disagrees if a Council rebuffs her consultation.

Fourth, Plaintiffs' assertion about the Council's role in record-development does not bear the weight placed on it. Pls.' Br. at 18-19. NMFS plays a central role in developing the record before the Councils. NMFS is both represented on each Council and provides technical support services necessary for the Councils' effective functioning, *see* 16 U.S.C. § 1852(f)(1)-(3). NMFS

---

[11] In *Oceana, Inc. v. Ross*, No. 17-cv-05146, ECF No. 124, at 2-3 (C.D. Cal. Nov. 18, 2019), the court ordered NMFS both to publish final regulations by a date certain and to consult the Council before revising the proposed regulations. *Id.* at 7. Because the Council did not meet until after the date by which the district court ordered NMFS to promulgate regulations, NMFS "d[id] not have an opportunity to consult with the Council on revisions to the regulations before the Court's deadline." 85 Fed. Reg. 7246, 7247 (Feb. 7, 2020) (emphasis added). Those regulations were ultimately vacated by another court because NMFS had concluded that they were inconsistent with National Standard 7, but promulgated them "only to comply with the California district court's order[.]" *Burke v. Coggins*, 521 F. Supp. 3d 31, 38-39 (D.D.C. 2021). The court order, not the Act, constrained the Secretary in *Oceana*.

ensures that Councils consider robust records that can inform and support both the Councils' recommendations and NMFS's consideration of them. *See* AR010426 (noting that NMFS identified three chapters needing further clarification). Additionally, a Council's record forms only part of the administrative record for any final NMFS action. NMFS's administrative record necessarily extends beyond the Council's record, as evidenced by the notice-and-comment process every proposed FMP, amendment, and regulation undergoes. *See* AR010681-011556.

Plaintiffs also ignore important differences between agency adjudication and rulemaking and rely on inapposite case law involving creation of a factual record for decisions in adjudicative proceedings. Pls.' Br. at 18 (citing *Freytag*, 501 U.S. 868 (tax judges), and *Lucia*, 585 U.S. 237 (administrative law judges)). Courts considering Appointments Clause challenges in the adjudication context have emphasized an administrative law judge's (or similar official's) ability to shape the factual record for any subsequent legal decision by managing discovery, deciding whether and when to compel the production of evidence, and similar decisions that drive adjudicative fact-finding. But even if such actions could improperly constrain a final decisionmaker in an adjudication, those concerns do not translate to rulemaking. Here, the Gulf Council's decisions about what to place in the record for *the Council's* recommendation do not limit what NMFS may consider in *NMFS's* rulemaking decision. Rather, NMFS can add to the record, and weigh, any information that arises from within the agency or through the notice-and-comment process, even if it was not in the Council's record. Thus, a Council's ability to contribute to the record before NMFS does not give it significant authority.

### E.  Plaintiffs Cannot Salvage Their Argument By Invoking Ancillary Provisions.

There likewise is no merit to Plaintiffs' contention that the Council has significant authority under several other provisions of the Magnuson-Stevens Act, as well as some from

other statutes. Pls.' Br. at 19-21. To begin with, none of these provisions were involved in promulgation of the challenged Final Rule.[12] Plaintiffs therefore lack standing to challenge the constitutionality of these provisions. To establish Article III standing, Plaintiffs must show that they have has suffered "a concrete, particularized injury fairly traceable to the defendants' conduct in enforcing *the specific statutory provision* they attack as unconstitutional." *California* v. *Texas*, 593 U.S. 659, 680 (2021) (emphasis added). Plaintiffs cannot make that showing here. The challenged Final Rule does not involve an effort to establish a limited access system, to delegate fishery management to States, to repeal or revoke a plan, or to compel the Secretary to issue emergency or interim measures. While Plaintiffs argue that sections 1854(c)(3), 1856(a)(3)(B), 1854(h), and 1855(c)(2)(A) improperly empower Council members to block or compel Secretarial action, Pls.' Br. at 19-20, none of those provisions are implicated here. Likewise, the Council's authorities under other statutes cited by Plaintiffs (*id.* at 21) played no role here. This case instead involves the decision by the Secretary to approve and implement a sector reallocation proposed by the Council as part of a rebuilding plan. Any decision concerning other statutory provisions not implicated here would amount to an advisory opinion.[13]

In any event, on the merits, none of the provisions authorizes Councils to take any action binding fishery participants. Each of the cited ancillary provisions also has quite limited scope.

---

[12] While the gag grouper fishery includes a limited access system previously established under 16 U.S.C. § 1854(c)(3), Amendment 56 does not involve the establishment of the system, which occurred years ago. In any event, the limited access system in place in this fishery was originally proposed by the Gulf Council and then approved by the Secretary, and so did not involve any effort by the Gulf Council to "block the Secretary's action on policy grounds." Pls.' Br. at 20.

[13] Plaintiffs contend that, under *Freytag*, they can challenge any authority of Council members to establish that they are officers, even if it played no role in the matter at hand. Pls. Br. at 12-13. But this ignores more recent developments in standing law. *See California*, 593 U.S. at 680. In any case, in *Freytag*, the Court held that the combination of different powers sufficed to make special trial judges officers of the United States, and that at least some of those powers had directly injured the challengers. *See* 501 U.S. at 881-882. So even if *Freytag*'s approach had not

For these reasons, any authority conferred on the Gulf Council is not "significant" authority under the laws of the United States. And, ultimately, even if some of these provisions are deemed to be "problematic portions" of the statute, the proper recourse is to sever them "while leaving the remainder intact." *Lofstad*, 117 F.4th at 501 (quoting *Free Enter. Fund*, 561 U.S. at 508).

Section 1854(h) simply seeks a Council consensus before existing, Secretarially-approved FMPs are repealed or revoked, and does not allow Councils to take any action that binds fishery participants. The Secretary retains her authority to amend an FMP if the Council fails to recommend an appropriate amendment in a reasonable timeframe, 16 U.S.C. § 1854(c), and Councils cannot repeal or revoke any FMP without the Secretary's approval, *id.* § 1854(h). Plaintiffs insinuate that this section has implications for the balance of power between states and the federal government. Pls.' Br. at 19. Not so. States have no inherent authority to regulate federal fisheries, although they can regulate vessels permitted under their own laws as they operate in federal waters, if there is no FMP or if the state requirements are consistent with applicable federal requirements. *Id.* § 1856(a)(3)(A). Moreover, if a fishery in federal waters requires conservation and management, it would be unlawful to revoke a plan under the Act. Thus, in the unlikely circumstances that revocation was proper, there would be no management authority over the fishery left to "return" to the States. Pls.' Br. at 19.

Neither Section 1856(a)(3)(B) nor Section 1854(c)(3) constrains the Secretary. *Contra* Pls.' Br. at 20. These provisions instead only seek the concurrence of the Council for certain limited actions with particular state and local relevance. The Council's concurrence merely

_____

been undermined by later developments in the law of standing, it can be distinguished because none of the ancillary provisions cited by Plaintiffs here have caused any injury to them.

ripens the issue for the Secretary's ultimate decision, and case law shows that limited concurrence provisions, particularly ones involving state and local support for a federal action, do not constitute significant federal authority. For instance, two courts have expressly found that a requirement in the Indian Gaming Reform Act, that the Secretary of the Interior obtain the approval of the relevant State governor before taking land into trust for Indian gaming purposes, does not violate the Appointments Clause. *See Lac Courte Orielles Band of Lake Superior Chippewa Indians of Wis. v. United States*, 367 F.3d 650, 662 (6th Cir. 2004); *Confederated Tribes of Siletz Indians of Or. v. United States*, 110 F.3d 688, 696-98 (9th Cir. 1997). Several cases considering the question of whether a statute improperly delegates federal executive or legislative power to a nonfederal actor have found that state and local concurrence requirements are not instances of improperly delegated federal power. *See*, *e.g.*, *North Dakota v. United States*, 460 U.S. 300 (1983) (implicitly upholding provisions of the Wetlands Act of 1961, amending the Migratory Bird Hunting Stamp Act, that condition the authority of the United States to acquire wetlands for waterfowl production purposes on the consent of the governor of the relevant State); *Currin v. Wallace*, 306 U.S. 1, 15-17 (1939) (upholding provision conditioning the Secretary of Agriculture's authority under the Tobacco Inspection Act to designate a tobacco market for government inspection and grading upon a referendum showing the support of two-thirds of the tobacco growers in that market).

Plaintiffs also incorrectly argue that Section 1855(c)(2) allows Councils to "compel the Secretary to issue regulations." Pls.' Br. at 20. This provision establishes that the Secretary "shall promulgate" emergency or interim measures if a Council "requests" such measures by unanimous vote. *Id.* But "the Council cannot force the Secretary to take any particular action." *Lofstad*, 117 F.4th at 501. Also, because "the Secretary can and does block unanimous votes by

having her designee (the Regional Director) vote against all such measures . . . [t]his Council authority is not significant either." *Id.*

In an "everything but the kitchen sink" approach, Plaintiffs present numerous provisions from other statutes, but this collateral attack also fails. Pls.' Br. at 21. First, the thrust of Plaintiffs' Complaint is that the Council's work under the Magnuson-Stevens Act violated the Appointments Clause, not their work under another statute. *See* Doc. 1 at 18 ("Because the Final Rule was issued under the provisions of the *Magnuson-Stevens Act* that require the Gulf Council to have first validly adopted an amendment … the Final Rule was 'not in accordance with law,'…" (emphasis added)). Moreover, the challenged rule in this case does not involve any of these non-Magnuson-Stevens Act provisions. Plaintiffs also misunderstand the provisions. For example, a closer look at 16 U.S.C. § 773c(c) reveals that the process for rulemaking to implement the Convention for the Preservation of the Halibut Fishery is similar to the Magnuson-Stevens Act scheme: the Council "may develop regulations," but such regulations "shall only be implemented *with the approval of the Secretary*." *Id.* (emphasis added). Thus, the Secretary executes "last-word capacity." *Lucia*, 585 U.S. at 249.[14]

**F. The Court Must Construe Any Ambiguity to Avoid Constitutional Doubt.**

The Magnuson-Stevens Act does not assign significant authority to Councils. But even if the Court found some ambiguity about whether any particular provision might afford Council

---

[14] Plaintiffs contend that members of the Gulf Council are principal rather than inferior officers. Pls.' Br. at 21-25. The Court need not reach this question because Council members are not officers at all. But if the Court were to conclude that Council members exercise significant authority in some circumstances, they would do so only as inferior officers subject to the Secretary's supervision. *See Arthrex*, 594 U.S. at 13) ("Whether one is an inferior officer depends on whether he has a superior other than the President.") (quoting *Edmond v. United States*, 520 U.S. 651, 662 (1997).

members significant authority, constitutional avoidance requires reading such provisions to assign Councils an advisory role.

The Court should not find the Act to authorize unconstitutional Council actions unless its plain terms unambiguously do so. If there is a reading of the Act that is "fairly possible" and consistent with the Constitution, "the canon of constitutional avoidance would [] counsel [] to adopt it." *See United States v. Hansen*, 599 U.S. 762, 781 (2023) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018)). Here, it is at least "fairly possible" to read the Act to convey only advisory responsibilities to Councils. Any ambiguity should be construed to avoid constitutional doubts. The Court should "seek harmony" and confirm the Councils' advisory role, rather than take up Plaintiffs' invitation "to manufacture conflict," *Hansen*, 599 U.S. at 781.[15]

## II.    Plaintiffs Are Not Entitled to Relief Against the Final Rule.

### A.  If the Court Identifies a Constitutional Flaw with Any Provisions, the Proper Remedy Is Severance.

The Assistant Administrator has authority to disapprove Council recommendations and to revise proposed regulations. *See supra*. Her decision to approve Amendment 56 and promulgate the Final Rule did not violate the Appointments Clause. But if the Court were to conclude that the Act nevertheless permits the Gulf Council to constrain the Secretary's discretion in a manner that constitutes significant authority, then the proper response is severance. *See Lofstad*, 117 F.4th at 501 ("Even though this statute has no severability clause, we can sever an

---

[15] Because the Council members do not exercise significant federal authority, the removal question is immaterial. *See Seila L. LLC v. CFPB*, 591 U.S. 197, 212-13 (generally providing that removal restrictions apply only to officers). Regardless, Plaintiffs have failed to state a removal claim because they have not established any injury traceable to the removal question. *See Collins v. Yellen*, 141 S. Ct. 1761, 1788-89 (2021) (To obtain a remedy, the challenging party must demonstrate not only that the removal restriction violates the Constitution but also that "the unconstitutional removal provision inflicted harm.").

unconstitutional provision unless Congress evidently would not have passed the remaining parts without the invalid ones." (citation omitted)). This approach would resolve the alleged "constitutional issues presented without invalidating an entire statutory scheme that has effectively governed the United States for decades." *New Eng. Fishermen's*, 2024 WL 5247893, at *56.

The Supreme Court took a similar approach to eliminate an Appointments Clause violation in *Arthrex*. *Arthrex* addressed the status of judges serving on the Patent Trial and Appeal Board, an adjudicative body. The Court held that the judges exercised powers "incompatible with their appointment by the Secretary to an inferior office." *Arthrex*, 594 U.S. at 23. That incompatibility arose from prohibitions on the relevant principal officer reviewing patent judge decisions, *see* 35 U.S.C. § 6(c), and prohibitions on removing those judges at will, *see* 5 U.S.C. § 7513. Together, these provisions "restrain[ed]" the principal officer from reviewing the decisions, which broke the "chain of command" between the Director and his subordinates. *Arthrex*, 594 U.S. at 18, 27. The Court concluded that this Appointments Clause violation could be eliminated by "a tailored approach," explaining that if the principal officer "were to have the 'authority to take control' of" adjudicative proceedings, then patent judges "would properly function as inferior officers." *Id.* at 25. The Court thus severed 35 U.S.C. § 6(c) "to the extent that its requirements prevent the [principal officer] from reviewing final decisions rendered by" patent judges. *Id.*

A comparable "tailored approach" here would sever any Magnuson-Stevens Act provisions to the extent those particular provisions provide Councils with authority incompatible with their method of appointment, thereby making clear that Councils play an advisory role. Severing any constraints on the Secretary's review of Council proposals found to be

unconstitutional would mirror the Supreme Court's approach in *Arthrex*, thereby permitting the principal officer to review and reject decisions by patent judges. Adopting such an approach here would be the narrowest possible modification to the scheme Congress created in the Act and would cure any constitutional violation.

This approach follows the "normal rule" that "partial" rather than wholesale "invalidation is the required course," so as not to "nullify more of a legislature's work than is necessary." *Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S 320, 329 (2006) (cleaned up). If the "remainder of the statute is 'capable of functioning independently' and thus would be 'fully operative' as a law," "[t]he Court's precedents reflect a decisive preference for surgical severance rather than wholesale destruction." *Barr v. Am. Assoc. of Pol. Consultants*, 590 U.S. 610, 626 (2020) (plurality opinion) (citation omitted). This limited approach to severance would respect Congress' policy conclusions about the need for a structured fisheries management process that includes state and regional participation and preserve the Act as an independently functioning, fully operative law.

## B. Plaintiffs Have Not Shown Any Injury Resulting from Any Infirmity in the Council.

Plaintiffs also have not shown that any putative constitutional infirmity in the appointment of Gulf Council members caused any injury they suffer. First, any injury here flows from the Assistant Administrator's independent decision to promulgate the Final Rule implementing the revised sector allocation. Second, a duly appointed quorum of the Council voted to recommend the revised sector allocation.

Plaintiffs identify no infirmity in the Final Rule and do not dispute that the Assistant Administrator is a properly appointed inferior officer duly authorized to exercise the Secretary's authorities under the Magnuson-Stevens Act. Plaintiffs merely take issue with the Council's role

in providing its recommendation. But that recommendation was purely advisory, and even without it, the Assistant Administrator would have had authority to revise the sector allocation if she concluded it was necessary for "conservation and management" of the fishery and the Council failed "to develop and submit" an amendment in "a reasonable period of time," 16 U.S.C. § 1854(c)(1)(A), (c)(6). The Assistant Administrator's independent act imposing the sector allocation breaks any causal link between the Council's action and injury to Plaintiffs.

Besides, even accepting Plaintiffs' argument that Council members are officers, a duly appointed quorum of the Gulf Council recommended the challenged amendment. Eleven of the Council's members were validly appointed by the Secretary. Nine of these eleven members constituted a quorum[16] that passed Amendment 56, with eight voting in favor and one voting against it. *See* AR005302. Thus, even if the other non-appointed members' votes were invalidated, the Council's recommendation would be unchanged.

Plaintiffs attempt to avoid this result by arguing that "if any Council member is unconstitutionally appointed, then the Council is still improperly constituted." Pls.' Br. at 27. This assertion goes too far. And their reference to *Free Enterprise Fund* does not assist, because "the referenced portion dives into arguments about whether an individual, or a commission, is the Head of a Department under the Appointments Clause." *Arnesen v. Raimondo*, No. 1:23-CV-145-TBM-RPM, 2024 WL 377820, at *23 (S.D. Miss. Jan. 31, 2024) (discussing *Free Enter. Fund*, 561 U.S. at 511-12 & n.12). Plaintiffs' reliance on *FEC v. NRA Political Victory Fund* is also misplaced because "there is no separation of powers issue" and Plaintiffs "make no factual allegations that the Council Members somehow exerted influence and control over the decisions

---

[16] "A majority of the voting members of any Council shall constitute a quorum," 16 U.S.C. § 1852(e)(1), and there are 17 voting members on the Gulf Council. *See id.* § 1852(a)(1)(E).

of the others in their 'on the record' meetings." *Arnesen*, 2024 WL 377820, at *23 (discussing *FEC v. NRA Pol. Victory Fund*, 6 F.3d 821, 826 (D.C. Cir. 1993)). Thus, the vote of the Council should be "accorded de facto validity." *Buckley*, 424 U.S. at 142.

Plaintiffs' invocation of the government's position in a 2004 case is taken out of context. *See* Pls.' Br. at 26 (citing *Delta Com. Fisheries Ass'n v. Gulf of Mex. Fishery Mgmt. Council*, 364 F.3d 269, 271 (5th Cir. 2004)). The issue in that case was the balance on the Gulf Council between recreational and commercial fishermen. Read in full, the sentence from the decision states: "The Association complained to the Secretary about this imbalance, but the Secretary responded that his ability to ensure 'fair and balanced' representation is limited because the governors control the pool of available appointees." *Id.* The first part of the sentence makes clear the focus of the government's position, and Plaintiffs have misrepresented that position by contending that "the Secretary's ability to influence a Council's position" was somehow limited. Pls.' Br. at 26. Further, the Secretary may send the slate of candidates back to the governor and request a new slate of potential appointees. 16 U.S.C. § 1852(b)(2)(C).

## CONCLUSION

For the reasons discussed above, the Court should deny Plaintiffs' motion for summary judgment and grant Defendants' cross-motion for summary judgment.

Dated:  January 10, 2025                    Respectfully submitted,

                                                           TODD KIM
                                                           Assistant Attorney General
        S. JAY GOVINDAN
        Section Chief
        MEREDITH L. FLAX
        Deputy Section Chief

OF COUNSEL

        */s/ Frederick H. Turner*

MARA B. LEVY                    FREDERICK H. TURNER

National Oceanic and Atmospheric
   Administration
Office of General Counsel
St. Petersburg, FL

Senior Trial Attorney
Wildlife and Marine Resources Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Phone: (202) 305-0641
Fax: (202) 305-0275
Email: frederick.turner@usdoj.gov

TIMOTHY A. HEISTERHAGEN
Assistant United States Attorney, Civil Chief
United States Attorney's Office
Southern District of Alabama

*Attorneys for Defendants*