IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DOMINICK RUSSO, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 24-00186-JB-M |
| | ) |
| GINA RAIMONDO, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Plaintiffs ask the Court to vacate a final rule promulgated by the National Marine Fisheries Service ("NMFS") under the Magnuson-Stevens Fishery Conservation and Management Act ("Act"), 16 U.S.C. §§ 1801 – 1891d. (89 Fed. Reg. 40,419 (May 10, 2024) ("Final Rule")). For the reasons set out below, the Court declines to do so. However, the Court concludes there are constitutionally problematic provisions of the Act that are due to be severed.

**I.    INTRODUCTION**

Plaintiffs are individual commercial fisherman and a fishing corporation. They fish for gag grouper in areas of the Gulf of Mexico covered by a federal Fishery Management Plan ("FMP") adopted pursuant to the Act. Plaintiffs are impacted by Annual Catch Limits ("ACLs") of gag grouper imposed by the challenged Final Rule which implemented the FMP. The Gulf of Mexico Fishery Management Council ("GMC"), established under the Act, participated in the rulemaking process that resulted in the FMP and Final Rule. NMFS promulgated the Final Rule, exercising delegated powers of the Secretary of Commerce under the Act.

Plaintiffs argue the Final Rule is invalid because the members of the GMC were unconstitutionally appointed. According to the Plaintiff, the appointments of the GMC members were unconstitutional and, as such, the NMFS was without authority to promulgate the Final Rule.

**A.    STATUTORY BACKGROUND**

Congress enacted the Magnuson-Stevens Fishery Conservation and Management Act to conserve and manage the fishery resources of the United States. 16 U.S.C. § 1801, *et seq.* The Act vests the Secretary of Commerce ("Secretary") with "general responsibility to carry out any fishery management plan or amendment approved or prepared by him," and the authority to promulgate regulations:

> The Secretary shall have general responsibility to carry out any fishery management plan or amendment approved or prepared by him, in accordance with the provisions of this Act. The Secretary may promulgate such regulations, in accordance with section 553 of title 5, United States Code, as may be necessary to discharge such responsibility or to carry out any other provision of this Act.

*Id.* § 1855(d). By a series of delegations, commencing with the Secretary to the Under Secretary of Commerce for Oceans and Atmosphere, the Secretary's authority under the Act is exercised by NMFS.

The Act also establishes eight Regional Fishery Management Councils. *Id.* at § 1852. The GMC, at issue here, has 17 voting members. The NMFS regional director for the Gulf of Mexico is one member. Five members are designees of the Governors of the five states in the Gulf Council, *i.e.*, Texas, Louisiana, Mississippi, Alabama, and Florida. The remaining six GMC members are appointed by the Secretary from names submitted by the respective Governors.

The functions of the Councils include preparation and submission of proposed FMPs and FMP amendments to the Secretary. *Id.* at § 1852(h)(1). FMPs are to address, *inter alia*, conservation and management measures, prevention of overfishing, and the protection, restoration, and promotion of the long-term health and stability of fisheries. *Id.* at § 1853(a). After a Council submits an FMP or amendment to the Secretary, the Secretary reviews it for consistency with "national standards, the other provisions of [the] Act, and any other applicable law[.]" *Id.* at § 1854(a)(1)(A). In undertaking this review, the Secretary must also consider the information, views, and comments from "interested persons," and consult with certain other government officials. § 1854(a)(2). The Secretary publishes a notice of the proposal for a 60-day comment period. § 1854(a)(1)(B).

Within 30 days of the close of the 60-day comment period, the Secretary must approve, partially approve, or disapprove the proposed FMP or amendment. § 1854(a)(3). If the Secretary does not notify the Council within 30 days of the comment period of her approval, disapproval, or partial approval, the proposed FMP or amendment takes effect "as if approved." § 1854(a)(3). A notice of disapproval or partial approval must specify the law with which the proposal is inconsistent and the nature of the inconsistency, and recommend action to resolve the inconsistency. *Id.* at § 1854(a)(3). The Council may then submit a revised FMP or amendment to the Secretary for review. *Id.* at § 1854(a)(4). The Act also authorizes the Secretary to prepare FMPs and amendments if a Council fails to submit a plan for her review or fails to submit revisions of plans the Secretary has disapproved or partially disapproved. § 1854(c).

Certain authorities granted to the Secretary under the Act are constrained by authorities granted to Councils. The Secretary may not include a limited access system in an FMP or

amendment without prior approval of a majority of the respective Council. *Id.* at § 1854(c)(3). Additionally, the Secretary's delegation of certain authority to states to regulate vessels outside its boundaries is conditioned upon the approval of three-quarters of the respective Council. *Id.* at § 1856(a)(3)(B). The Act also provides the Secretary with authority to repeal or revoke an FMP under the authority of a Council, but only upon the approval of three-quarters of the respective Council. *Id.* at § 1854(h) ("The Secretary may repeal or revoke a fishery management plan for a fishery under the authority of a Council only if the Council approves the repeal or revocation by a three-quarters majority of the voting members of the Council.").

Neither FMPs nor amendments are self-implementing. They are implemented by regulation. The Secretary may promulgate regulations, in accordance with 5 U.S.C. § 553, as may be necessary to discharge her general responsibilities under the Act "or to carry out any other provision of [the] Act." *Id.* at § 1855(d). Councils may propose regulations to the Secretary. I*d.* at § 1853(c)). The Secretary evaluates regulations proposed by a Council for consistency with the corresponding FMP or amendment, the Act, and other applicable law. § 1854(b). If the Secretary determines there is consistency, she must publish the proposal in the Federal Register for a period of public comment. § 1854(b)(1)(A). After public comment, the Secretary must "promulgate final regulations[.]" *Id.* at § 1854(b)(3). However, she may revise regulations proposed by the Council after consulting with it. *Id.* Revisions of regulations by the Secretary are not subject to Council approval.

If the Secretary determines a regulation proposed by a Council is inconsistent with the subject FMP, she must notify the Council of the inconsistency and recommend revisions. §

1854(b)(1)(B). A Council which receives such notification may propose revised regulations to the Secretary. *Id.* at § 1854(b)(2).

Section 1855(c)(2)(A) states the Secretary shall promulgate emergency regulations or interim measures if a Council finds they are needed to reduce overfishing.

**B.     AMENDMENT 56 AND THE FINAL RULE**

The procedural background details of Amendment 56 and the Final Rule are not disputed. In sum, in June 2023, the GMC prepared a proposed FMP amendment to address overfishing of gag grouper in the Gulf of Mexico. (AR010426). The GMC submitted a revised proposal to NMFS in September 2023. (AR010427-680). In October 2023, NMFS published notice of Amendment 56 and requested public comment. (AR010893 (88 Fed. Reg. 71812 (Oct. 18, 2023))). NMFS published a Proposed Rule to implement Amendment 56 in November 2023. (AR011053-63 (88 Fed. Reg. 77246 (Nov. 9, 2023))). NMFS approved Amendment 56 in January 2024 after considering comments. (AR011176).

On May 10, 2024, NMFS issued the Final Rule. (89 Fed. Reg. 40,419 (May 10, 2024)). (AR011539-56). Amendment 56 and the Final Rule decreased the stock catch limits for gag grouper. (AR010456-57; AR011540).

**II.     ANALYSIS**

Defendants argue the issues raised in the instant motions for summary judgment were presented and properly analyzed in *Lofstad v. Raimondo*, 117 F.4th 493 (3d Cir. 2024) and *New Eng. Fishermen's Stewardship Ass'n v. Raimondo*, 761 F. Supp. 3d 141 (D. Me. Dec. 30, 2024). The Court agrees.

### A. STANDING

Defendants challenge Plaintiffs' standing.  The elements of standing are (1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  Plaintiffs are engaged in commercial fishing of gag grouper.  The Rule's reallocations reduce the amount of gag grouper they can catch, thereby reducing their income.  That injury is traceable to the Defendants' promulgation of the Final Rule.  The injury also is redressable because the Court will vacate the Rule if, as the Plaintiffs allege, Defendants lacked authority to issue it.

The Court concludes Plaintiffs have standing.  *See Lofstad v. Raimondo*, 117 F.4th 493, 497–98 (3d Cir. 2024) (holding that fishermen had standing to challenge improper appointment of Council members).

### B. COUNCIL MEMBERS ARE PRINCIPAL OFFICERS OF THE UNITED STATES

Plaintiffs challenge the Final Rule based on the appointments of the GMC members under the Act.  They argue the appointments violate the Appointments, Executive Vesting and Take Care Clauses of the United States Constitution.  Plaintiffs contend the alleged unconstitutional appointments of the GMC members render NMFS' promulgation of the Final Rule invalid, and ask the Court to vacate it.

The Appointments Clause of the United States Constitution requires "Officers of the United States" to be nominated by the President and confirmed by the Senate.  U.S. Const. art. II, § 2, cl. 2.  Congress, though, may allow "such inferior Officers, as they think proper," to be appointed by the President alone.  *Id.*  However, the Appointments Clause does not apply to mere

employees, who are "lesser functionaries subordinate to officers of the United States." *Buckley v. Valeo*, 424 U.S. 1, 126, n.162 (1979).

It is undisputed the President did not appoint the GMC members. The question, then, is whether the GMC members are "officers" who are subject to the Appointments Clause as Plaintiffs contend, or are they mere employees who are not. In *Lucia v. SEC*, the Supreme Court explained the "basic framework for distinguishing between officers and employees" is comprised of two considerations. 585 US 237, 245 (2018). First, "an individual must occupy a 'continuing' position established by law to qualify as an officer." *Id.* (quoting *United States v. Germaine*, 99 U.S. 508, 511 (1879)). Second, to qualify as an "officer," an individual must exercise "'significant authority pursuant to the laws of the United States.'" *Id.* (quoting *Buckley,* 424 U.S. at 126).

There is no dispute the GCM members occupy continuing positions established by law. Therefore, the question of whether GCM members are "officers" is determined by whether they exercise "significant authority" under federal law. For the reasons set out in *Lofstad* and *New England Fishermen*, the Court concludes they do. "'[S]ignificant authority' . . . turns on how much 'power an individual wields in carrying out his assigned functions.'" *Lofstad*, 117 F.4th at 498 (quoting *Lucia*, 585 U.S. at 245). "Having significant duties and discretion to carry them out is significant authority." *Id.* (quoting *Freytag v. Comm'r*, 501 U.S. 868, 881-82 (1991)). Additionally, the question of "significant authority" is answered by "whether another part of the federal executive, legislative, or judicial branch can 'control or direct[]' how an official exercises her powers." *Id.* (quoting *Buckley*, 424 U.S. at 126, n.162).

7

### (i) "Significant Authorities"

Many of the responsibilities the Act provides to Councils are wholly advisory. Many, but not all. The Act also grants authorities to Councils that bind the Secretary. These include §§ 1854(c)(3), 1856(a)(3)(B), and 1854(h), all of which empower the Council to prevent the Secretary from exercising certain authorities granted her under the Act. (*See* I. A., *supra.*). The courts in *Lofstad* and *New England Fishermen* aptly describe these sections as "pocket-vetoes." *See Lofstad*, 117 F.4th at 499 – 500, and *New England Fishermen*, 761 F. Supp. 3d at 209. A Council's exercise of these authorities is not controlled or directed by "another part of the federal executive, legislative, or judicial branch."

For the reasons stated herein, and in *Lofstad* and *New England Fishermen*, the Court concludes GMC's "pocket-veto" powers under the Act constitute "significant authority."

### (ii) Non-Significant Authorities

Except for the "pocket-veto" authorities discussed above, however, the Court concludes the authorities challenged by Plaintiffs are not significant.

The Final Rule was promulgated under § 1854(b). Plaintiffs argue, though, the Secretary cannot promulgate a regulation under § 1854(b) unless it is validly adopted by a Council and supported by an FMP or amendment validly adopted by the Council. The Court disagrees. Section 1854(b) requires the Secretary to consult with the Council, but nothing more. The Secretary's authority to revise Council-proposed regulations is not subject to Council approval. The court in *Lofstad* correctly noted:

> First, the Council proposes regulations. § 1853(c). (Among other things, these regulations set annual catch limits for fisheries.) Then, after letting the public comment, the Secretary decides whether to promulgate or reject them. § 1854(b)(1), (3). She can also revise proposed regulations after "consult[ing] with

> the Council" and explaining any changes in the Federal Register. § 1854(b)(3). But nothing in the statute requires the Council's approval for those changes. On the contrary, if the Secretary disapproves a plan or the Council fails to make one in reasonable time, the Secretary can make her own plan and regulations; the Council may only advise on these. §§ 1854(c), 1855(d).

117 F.4th at 496. "The consultation requirement does not give the Council a back door to force its proposals into law." Id. at 500.

Plaintiffs also argue the GMC's authority to propose FMPs and amendments amounts to significant authority. According to Plaintiffs' interpretation of §§ 1853(c) and 1854(a)(3), "any [Council] proposal that is lawful becomes law." (Doc. 30 at PageID.205). Plaintiffs contend the Act limits the Secretary's authority to disapprove a Council-proposed FMP or amendment by requiring, under § 1854(a)(3)(A), that she specify a law with which the proposal is inconsistent. This argument fails for the following reasons.

Section 1854(a)(3)(A) does not require the Secretary to indiscriminately approve Council FMP proposals unless she identifies a legal violation, nor does it provide that her failure to do so invalidates her disapproval. The Act, in fact, directs the Secretary to conduct a multi-faceted analysis, both of legal and non-legal considerations. In conducting her review of a proposal for consistency with applicable law under § 1854(a)(1)(A), the Secretary must also take "into account the information, views, and comments received from interested persons," and consultations "with the Secretary of State with respect to foreign fishing" and "with the Secretary of the department in which the Coast Guard is operating with respect to enforcement at sea and to fishery access adjustments referred to in section 303(a)(6)." § 1854(a)(2). The scope of the Secretary's review, and her authority to disapprove proposals, is not so cramped as Plaintiffs

9

argue. Plaintiffs' myopic interpretation of subsection (a)(3)(A) is incompatible with the broad-based review § 1854 requires of the Secretary.

Additionally, the court in *Lofstad* concluded under § 1854(a)(3)(A), "the buck stops with the Secretary (and thus the President)." 417 F.4th at 500. This Court agrees, for the reason that FMP's are not self-implementing but require the promulgation of regulations which the Secretary undertakes apart from Council approval. (*See supra.*).

Similarly, the Court rejects Plaintiffs' argument that "the Council's decisions" have independent effect. (Doc. 30 at PageID.207). The Council's "decisions" to which Plaintiffs refer are Council proposals of FMPs and amendments. However, for reasons state above, these "decisions" do not have independent effect. Indeed, only by and after affirmative action or inaction of the Secretary is any proposal recommended by a Council given effect (independent or otherwise), and then is given effect only "as if approved" by the Secretary. § 1854(a)(3). Further, and as noted above, Defendants correctly argue FMP and amendments proposed by Council's have no legal effect on their own. They must be implemented by the Secretary's promulgation of regulations. *See N.C. Fisheries Ass'n v. Gutierrez*, 550 F.3d 16, 17 (D.C. Cir. 2008) ("Plans, however, do not themselves have any regulatory effect-implementing regulations must also be enacted in order to effectuate them."). As set out above, the Act vests the Secretary with the final power to control both FMPs and implementing regulations.[1]

---

[1] The Court likewise rejects Plaintiffs' argument that the consultation requirement in § 1854(b)(3) enables Councils to compel the Secretary to issue a proposed regulation, and to deprive her authority of revision, simply by refusing to consult with her. A reasonable reading (if not the only reasonable reading) of the text is, as Defendants argues, the Secretary satisfies the consultation aspect of § 1854(b)(3) when she solicits consultation from a Council and provides it an opportunity to respond. *See also*, *Lofstad*, 117 F.4th at 500 ("The consultation requirement does not give the Council a back door to force its proposals into law.").

Plaintiffs also argue § 1855(c)(2)(A) vests GMC with "significant authority" regarding the promulgation of emergency regulations. Section 1855(c)(2)(A) states:

> (2) If a Council finds that an emergency exists or that interim measures are needed to reduce overfishing for any fishery within its jurisdiction, whether or not a fishery management plan exists for such fishery—
>
> (A) the Secretary shall promulgate emergency regulations or interim measures under paragraph (1) to address the emergency or overfishing if the Council, by unanimous vote of the members who are voting members, requests the taking of such action;

The Court is unpersuaded by Plaintiffs' argument here. Section 1855(c)(2)(A) does not enable Councils to control, or even advise, as to the content or substance of any emergency regulation. In *Lofstad*, the court similarly concluded § 1855(c)(2)(A) did not vest "significant authority" because it did not empower Councils "to force the Secretary to take any particular action," and she can "block unanimous votes by having her designee (the Regional Director) vote against all such measures." 117 F.4th at 501.

Next, Plaintiffs argue Councils wield "significant authority" because of their role in shaping administrative records. (Doc. 30 at PageID.209). Plaintiffs rely on *Freytag*, *supra*, and the analysis of special tax court judges and administrative records. Plaintiffs' reliance is misplaced. Under the Act, the Secretary is not confined to a Council record in her deliberative process. To the contrary, as Defendant correct argues, "a Council's record forms only part of the administrative record for any final NMFS action. NMFS's administrative record necessarily extends beyond the Council's record, as evidenced by the notice-and-comment process every proposed FMP, amendment, and regulation undergoes." (Doc. 32 at PageID.276).

Plaintiffs also argue Councils have "significant authority" based on powers outside the Act. (Doc. 30 at PageID.212). However, none of the extra-Act provisions Plaintiffs cite authorize

11

the Council to take an action binding on fishery participants. One of the Council "powers" Plaintiffs cite is expressly subject to approval of the Secretary. The Court concludes that none of the extra-Act powers argued by Plaintiffs constitute "significant authority."

### (iii) GMC Members are "Officers of the United States"

The Act's provision of purely advisory responsibilities to Councils (*see* section (ii), *supra*.) does not affect the significant character of Councils' separate authorities under §§ 1854(c)(3), 1856(a)(3)(B), and 1854(h) (*see* section (i), *supra*), or the application of the Appointments Clause to Council members empowered to exercise them. *United States v. Arthrex*, 594 U.S. 1, 24 (2021) (plurality opinion). *See also, Lucia*, 585 U.S. at 247 n.4 ("it ma[kes] no sense to classify [officials] as officers for some cases and employees for others.") and *Freytag*, 501 U.S. at 882 ("If a[n] [official] is an . . . officer for purposes of [some of his duties], he is an . . . officer within the meaning of the Appointments Clause and he must be properly appointed.").[2]

The Court concludes the Act vests GMC members with "continuing and permanent" duties and provides for their exercise of "significant authority" under §§ 1854(c)(3), 1856(a)(3)(B), and 1854(h). As such, the GMC members are "Officers of the United States" subject to the Appointments Clause of the United States. *See Lofstad*, *supra*, and *New Eng. Fishermen's, supra.*[3]

---

[2] The Court also finds the Council members are "principal officers" as their exercise of pocket-veto powers over the Secretary is unreviewable. *See Lofstad*, 117 F.4th at 501, *New Eng. Fishermen's,* 761 F. Supp. 3d at 212.

[3] In light of the Court's conclusions that the GMC members are "Officers of the United States" for purposes of the Appointments Clause (*supra*), and that the appropriate remedy is to sever the provisions of the Act that make them so (*infra*), the Court need not address Plaintiffs' Vesting and Take Care Clauses arguments. Severance addresses all bases of Plaintiffs' claims. *New England Fishermen*, 761 F. Supp. 3d at 213.

**C.    SEVERANCE**

Notwithstanding the unconstitutional "pocket-veto" sections in the Act, the Court will not impose the remedy Plaintiffs request. Vacation is unnecessarily broad and severe. The Court starts with the standard expressed by the United States Supreme Court in *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197 (2020):

> "Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem, severing any problematic portions while leaving the remainder intact." *Free Enterprise Fund* [*v. Pub. Co. Accounting Oversight Bd.*], 561 U. S. [477], [] 508 [2010] (internal quotation marks omitted). Even in the absence of a severability clause, the "traditional" rule is that "the unconstitutional provision must be severed unless the statute created in its absence is legislation that Congress would not have enacted." *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 685 [] (1987).

591 U.S. at 234.

In *Seila Law*, the Supreme Court reviewed its opinion in *Free Enterprise Fund,* which addressed the appropriateness of severance of unconstitutional removal provisions. 591 U.S. at 234. The Court found severance appropriate in *Free Enterprise Fund*, even in the absence of an express statutory severability clause, "because the surviving provisions were capable of 'functioning independently' and 'nothing in the statute's text or historical context [made] it evident that Congress, faced with the limitations imposed by the Constitution, would have preferred no Board at all to a Board whose members are removable at will.'" *Seila Law*, 591 U.S. at 234 (quoting *Free Enterprise Fund*, 561 U. S. at 509).

The Court is persuaded by the analyses of severance in *Lofstad* and, especially, *New Eng. Fishermen's.* The court in *New Eng. Fishermen's*, relying on *Seila Law*, found severance to comport "with the Supreme Court's directive to 'use a scalpel rather than a bulldozer' to cure constitutional defects." 761 F. Supp. 3d at 213 (quoting *Seila Law*, 591 U.S. at 237). Severing the

13

Council's ability "to pocket veto the Secretary's desired adoption of a limited access system [§ 1854(c)(3)] or to repeal an FMP [§ 1854(h)] does not interfere with the primary responsibility of the Councils as policy developers and advisors, nor does it reallocate the truly binding legal authority of the statute, issuing regulations, from the Secretary." *New Eng. Fishermen's*, 761 F. Supp. 3d at 213. This Court agrees "the truly binding legal authority" of the Act is the Secretary's authority to issue regulations. 761 F. Supp. 3d at 213.

In *Lofstad*, the court concluded, "[e]ven if we knock out the pocket vetoes, the statute remains 'fully operative'" and stated, the "Council's 'most significant responsibility' is drafting proposed plans; that duty remains untouched." 117 F.4th at 501 (quoting *NRDC v. Nat'l Marine Fisheries Serv.,* 71 F. Supp. 3d 35, 40 (D.D.C. 2014) (K.B. Jackson, J.))."[4] The Court agrees, and likewise finds the Act's surviving provisions are capable of "functioning independently," and that "Congress would have passed [the Act] without its 'invalid' components' in light of the law's 'text [and] historical context.'" *Seila Law*, 591 U.S. at 234. Severance of the "pocket-vetoes" resolves the discrete unconstitutional features of the Act challenged in this case, while leaving intact the entire statutory scheme which operates by the exercise of Secretarial authority to promulgate binding regulations, with the benefit of Council advice and proposals.

### III. CONCLUSION

Upon due consideration, and for the reasons stated herein, Plaintiffs' Motion for Summary Judgment (Doc. 30) is **GRANTED IN PART AND DENIED IN PART** and Defendants' Cross-

---

[4] The "pocket-veto" provisions at issue in *Lofstad* are those at issue here, *i.e.*, §§ 1854(c)(3), 1856(a)(3)(B), and 1854(h). The challenge in *New England Fishermen's* involved only §§ 1854(c)(3) and 1854(h).

Motion for Summary Judgment (Doc. 32) is **DENIED**.  The Court orders 16 U.S.C. §§ 1854(c)(3), 1856(a)(3)(B), and 1854(h) to be **SEVERED** from the Act as unconstitutional.

**DONE and ORDERED** this 24th day of November, 2025.

/s/ JEFFREY U. BEAVERSTOCK
CHIEF UNITED STATES DISTRICT JUDGE
